Millard L. Midonick, J.
This proceeding was commenced by petition of a custodial mother for upward modification, under section 461 of the Family Court Act, of a Nevada decree of divorce rendered in 1964, providing substantial sums per month for the support of three minor sons of respondent, all still under age 14, whose custody was given by separation agreement of 1964 to the petitioning mother.
The issues before me are:
(A) Respondent’s contention that the arbitration clauses in the separation agreement of the parties, dated September 4, 1964, which was incorporated in and by its terms survived the Nevada divorce decree, oust the Family Court of all jurisdiction over support of these children, their schooling, custody and visitation.
(B) Respondent’s further contention that even if the Family Court retains some supervisory jurisdiction to protect the interests of these minor children of respondent and petitioner, no discovery or examination before trial as to respondent’s alleged change of circumstances for the better in his earning capacity, or as to his ability to pay more support for his sons, should be ordered by Family Court in advance of either arbitration or plenary trial in Central Trial Term of Family Court.
(C) The respondent’s further contention and motion that all proceedings in the Family Court be stayed pending the award in arbitration as to support and schooling, and pending the decision *251 of the Court of Common Pleas, Stamford, Connecticut, where a habeas corpus proceeding was brought by the respondent father praying transfer of custody of the children.to him, said habeas corpus writ having been procured by the father in the place where the mother and the children live, but sought after the commencement of this support proceeding here.
No one questions the propriety of venue or jurisdiction over the person of the father in Family Court, since the respondent father lives and works in New York County. But respondent for the reasons outlined, does question the power of Family Court to rule on the subject matter involved; and with respect to pretrial discovery and examination as to his ability to pay more, the respondent urges that such an order would be improvident even if this court has jurisdiction of the subject matter.
In the few minutes of hearing leading to an order by me of temporary support and visitation, and a limited stay of further proceedings here for about two months, the petitioning mother proved and the respondent did not controvert, that the behavior of one of the sons had deteriorated substantially since the separation agreement and the divorce, and that the boy was consequently enrolled in an expensive boarding school specializing in treatment of disturbed children. The respondent contends, however, that a change in custody to himself will moderate the expense and improve the condition of all of the children; he further urges that the custody issues would be better resolved in the Connecticut court with psychiatric, school and other specialized evidence available in the very locale of the Stamford courthouse, and that the support issues would more properly be heard in arbitration as agreed, and that the petitioner should be compelled to honor child visitation availability to respondent father which has been recently suspended, triggering respondent’s counter measure of suspending support payments.
Petitioner on the other hand pressed for the resolution of all issues in the Family Court on the grounds that custody should remain as agreed and decreed, unless this court should find reason, on the basis of evidence including expert social and investigatory resources, sufficient to require modification for the welfare of the children; that upward modification of support, and issues of care, treatment and schooling are within the expert competence of the Family Court and its auxiliary psychiatric, psychological and probation services, rather than arbitration or habeas corpus proceedings.
That habeas corpus proceedings in a court of general jurisdiction are not usually the best way to resolve child custody problems in a “ delicate family situation ” where “ a sensitive *252 investigation is required,” has been held by the First Department in People ex rel. Borella v. Borella (21 A D 2d 871). The Fourth Department has also ruled that a court of general jurisdiction does not usually have the facilities to ascertain the ' ‘ best interests of the child * * * to which, in the event of conflict, all others must be made to defer * * * We, therefore, refer the case to Family Court of Oneida County for a full hearing and exploration with the aid of such investigations by and reports from social, psychiatric and other services as are available in Family Court and which the court may deem to be helpful.” (Lockwood v. Jagiello, 24 A D 2d 544, 545.)
Nevertheless, since these three children are not living within the State of New York, and since this court was assured at the hearing that the Court of Common Pleas of Stamford, Connecticut, has a psychiatrist and investigators in its own auxiliary services, and since the school authorities and their treatment personnel are more readily available to give evidence in the locality of Stamford, and since the former marital domicile before the break-up was in Connecticut and the petitioner and the children have continued to live there after the originally intact home was put asunder, this court will abstain from exercising its powers and it will await the custody outcome in the Court of Common Pleas of Stamford, Connecticut. This abstention is subject to review at Central Trial Term of this court on March 4, 1968 or thereafter, if the welfare and best interests of the children appear to require this court to deal further with problems of custody or visitation or schooling. It is hoped and expected that this court will wish, and indeed both parties will wish, merely to enforce the Connecticut determination in habeas corpus. This court does not mean to detract from the respect due the courts of our sister State, but it must be recalled that both parties saw fit to resort to the courts of Nevada, not Connecticut, in 1964 for the original custodial arrangement, and the respondent did not see fit to commence his custodial suit in Connecticut until after and apparently as a reaction to the support proceeding at bar; moreover, the petitioner has chosen, and chosen first, Family Court in New York as her forum, not a Connecticut court. In connection with such a suit, or independently, the Family Court may entertain the modification of custodial arrangements made by the court of another jurisdiction (Family Ct. Act, § 654; Matter of Chin v. Ten, 41 Misc 2d 650.)
That New York can review and change the custodial arrangements made in the decree of Nevada in 1964, and even in the expected decree of Connecticut in 1968, seems clear. (See Mat *253 ter of Bachman v. Mejias, 1 N Y 2d 575, 580; cf. Ford v. Ford, 371 U. S. 187; Kovacs v. Brewer, 356 U. S. 604; and see Note, Ford v. Ford, Full Faith and Credit to Child Custody Decrees ?, 73 Yale L.J. 134.) It is not that child custody decrees of other States are not entitled to full faith and credit (but cf. Rodgers and Rodgers, The Disparity Between Due Process and Full Faith and Credit: The Problem of the Somewhere Wife, 67 Col. L. Rev. 1363, especially p. 1369 n. 43). Full faith and credit means only that faith and credit to which such child custody decrees are entitled in the State from which the decrees are taken. The problem with child custody decrees, by their very in futuro nature being transitory, ephemeral and subject to change, and based to some extent on transcendental or unformulatable grounds, is that they lack the persistence of ordinary judgments for money damages, for replevin or for title. One can replevy a painting by Rembrandt, or sweep away the cloud on the title or right to possession of real property, and when done, the judgment is truly res judicata. Not entirely so with judgment for custody of a minor child. The child continues to develop and the interrelationships between the custodial home and the child grow on and on, like the changing stability of a ship in the course of both alteration or construction by a naval architect, and changes in weather, cargo, mission and command. How then can the courts even of the same State feel bound by the prior custodial decision of their own courts, if continuing the current home is not in the best interests of the child? If such a doctrine were to be announced, it would appear violative of substantive due process of law for the child. And this would be so even if the child had a guardian ad litem in the earlier custody litigation. Res judicata simply must give way to the current best interests of a child on the issue of custody.
And if such substantive due process takes precedence over res judicata in the later custody suit in the same forum, obviously the different forum of another State is no more bound by full faith and credit (or comity) than the first State is bound by res judicata. Indeed, full faith and credit is, to the extent that it is imposed on the later State, merely an interstate (and Federally supervised) form of res judicata. Learned authors have shown that procedural due process, binding an absent spouse in the first State, does no require as high standards as those of full faith and credit sufficient to reach out to bind the same absent spouse in another State. (See Rodgers and Rodgers, supra, 67 Col. L. Rev. 1363.) But one must not mistake the relatively easy-to-achieve procedural due process, for the supreme authority of substantive due process. Thus formu *254 lated, substantive due process appears to be substantially equivalent to justice itself; to deny review of a former custodial decision when it appears that a de novo examination would indicate a change in environment to be desirable, is to perpetrate an injustice upon a child. Substantive due process, thus defined, must of necessity set the limits of res judicata, full faith and credit, comity, the obligation of contract (i.e., custody under separation agreement), and also, by the way, arbitration awards which are discussed below.
The attempt by any court (or the parents by agreement) to control the future as to the custody of a child, is an attempt to solve a problem beset by its nature with a galaxy of variables which change year by year, and which are by their impalpability resistant to full verbal formulations as findings of evidentiary fact sufficient for the later forum to compare as to changes of circumstances. Thus it is that excessive rigidity by a later forum in following a child custody award of a first forum without re-examination if cause can be shown that a child would be substantially better served by living with or by visiting more with the other parent, is tantamount to a denial of substantive due process of law to the child.
So here the forthcoming decision of the Connecticut court, assuming expert assistance and expert witnesses with first hand knowledge concerning the children, and hopefully concerning the parents and their respective homes (one home is in our jurisdiction; the other in Connecticut), and having the children and both parents before it, will be entitled to respect for a reasonable time; this court can, if need be, gain all this information since both parties are also before us, our probation investigation can be made, and the mother is anxious and able to present the children physically in this court, and the expert witnesses from the Connecticut schools would give evidence here, although perhaps reluctantly. But the more convenient forum being that of Connecticut, this court should abstain as long as the best interests of the children are served.
Turning now to the arbitration problems, the separation agreement of the parties provides that all financial problems between the parties shall be submitted to arbitration, and also in a more inclusive provision, it sets forth: “sixteenth: In the event that any dispute should arise in connection with this Agreement or the interpretation thereof the Husband and the Wife agree to submit the same to arbitration and if an arbitrator cannot be agreed upon by them, then and in that event the Husband and the Wife shall each select an arbitrator and the two so selected shall agree upon a third arbitrator, or if they cannot *255 agree upon a third arbitrator, such third arbitrator shall be selected by a judge of the Superior Court of Connecticut, and the majority’s decision (of the three arbitrators) shall be final and binding upon the parties hereto and may be enforced in accordance with the laws of the State of Connecticut and judgment upon the awards rendered may be entered in any court having jurisdiction thereof. The expenses of arbitration shall be borne by the party against whom the award is made unless the arbitrator or arbitrators otherwise direct.”
By his resort to the Connecticut court, presumably respondent has waived his right to arbitrate the issue of custodial change. The petitioner can demand arbitration as to custody, but she appears not disposed to do so.
As to financial modification, the arbitration agreement controls up to the point that it may be found to conflict with the welfare of the children. At the January 11, 1968 hearing, I ruled that no arbitration agreement can result in further delay in payment of delinquent school tuition for fear of expulsion of the children from school. Similarly, I ruled that current support expenses for these children must be paid by order of Family Court pending arbitration award, in order to avoid current deprivation to the children. The urgency required by the Family Court Act to warrant a temporary order of support, was plain.
With respect to a stay of further proceedings in this court pending the arbitration (and custody) determinations elsewhere, the respondent’s application for an indefinite stay was denied as unfair. The evidence at the hearing convinced me that speedy arbitration was not to be expected of the respondent who was resisting petitioner’s demands for more support for their children. Consequently the stay was granted for a stated time only, approximately two months until March 4, 1968. In order to preserve the status quo during the stay, it was in effect conditioned on payment of the temporary order of support; enforcement application can be made if respondent is 10 days delinquent in any payment. The temporary order of support is without prejudice to either party whether the issue be arrears or upward modification, or indeed downward modification. The date of ending of the stay was fixed at March 4, 1968 for two reasons: that date was available for Central Trial Term in this court to review the arbitration award or lack of one; and the period of almost two months of stay was considered ample time for respondent to conclude both court custody and arbitration support proceedings if he uses dispatch.
In making this temporary order which envisions a final order of support on and after March 4, 1968, I was aware of the pos *256 sible lack of authority in this Family Court, which although a court of record created by the Constitution of the State of New York is nevertheless a court of limited jurisdiction, to enforce arbitration awards as such. (Cf. CPLR 7503; Matter of Banks v. Banks, 54 Misc 2d 186.) Rather the authority of the Family Court derives from the Constitution of the State of New York (art. VI, § 13, subd. b, pars. [2] and [4]). Compare Matter of Chin v. Yen (41 Misc 2d 650, supra) where it is held that Family Court’s plenary powers as to custody of minors are self-executing; and of course sections 413 and 461 of the Family Court Act proceed to implement in express statutory form the constitutional mandate for similar plenary powers as to support of dependents. As the First Department has so cogently indicated, the arbitration proceeding and award can be invoked, but its effect on children can be challenged not only in application to confirm the award, application or cross application in opposition to the confirmation of the arbitration award, but also in “ an independent proceeding.” (See Sheets v. Sheets, 22 A D 2d 176, 178, 179.) The instant proceeding is quite “ independent ” of arbitration enforcement.
Even more to the point is Schneider v. Schneider (17 N Y 2d 123, 126) which characterized Sheets (supra) as a “thorough and convincing opinion.” There the Court of Appeals unanimously affirmed an order granting defendant’s motion to stay court fixation of child support and court order as to education “ on condition that defendant initiate arbitration proceedings within a stated time.” (p. 124). I have here, by necessity, re-established a temporary support and a schedule of school tuition payments sufficient to maintain the status quo pending arbitration, on condition arbitration be concluded by a stated time, March 4, 1968, approximately two months after the stay was given. The Court of Appeals in Schneider (supra) did not limit court supervision even implicitly to Supreme Court supervision. although the Supreme Court was there involved. The Court of Appeals in Schneider carefully stated (pp. 127-128) that ‘ ‘ to affirm here we need not hold that an award made by an arbitrator is final and beyond court [i.e., any court having jurisdiction of child support] review * * * ‘ Thus, the best interest of the child is assured protection by the omnipresent judicial [i.e., any Judge, including a Family Court Judge, having child support jurisdiction] check against arbitration awards in * * * [children’s] matters attaining the unassailable finality of awards in other arbitrations. Nor could any such award * * * be given any res judicata consequences against the child who was not a party to the arbitration. However, such *257 an award would effectively bind the parents of the child to the extent that it settled their disputes, but only insofar as the award did not adversely affect the substantial interest of the child. ’ ” With respect to the issue of disclosure and examination before trial as to respondent’s ability to afford increase in the support payments, no special circumstances as to the respondent’s business affairs were- shown sufficient to warrant such pretrial procedures incommoding the respondent. This is so even though special circumstances have been proved that the needs of the children have substantially increased due to disturbed behavior and special treatment oriented schooling. (Cf. Matter of Schwartz v. Schwartz, 23 A D 2d 204; Lesher v. Hyman, 25 A D 2d 847; Matter of Schwartz v. Schwartz, 48 Misc 2d 859; Matter of Rann v. Rann, 54 Misc 2d 704.) On the contrary, arbitration itself is a special circumstance weighing in favor of the respondent, because all pretrial preparation and facts and analysis can be brought out at arbitration, and the record there as well as the award can, if supervision in Family Court still be required, be used as a basis for plenary trial in Family Court Trial Term.