Millard L. Midonick, J.
Before this court is a petition to enforce a Supreme Court judgment of divorce in respect to (1) the award to their mother of custody of two infant daughters of the marriage, and (2) the arrears and future payments of support and maintenance of the ex-wife and the said children.
The name of the problem presented is “ court fragmentation”; the solution is reasonable court unification. The fragmented (post-divorce) family before the court in this proceeding cannot be well served by jurisdiction fragmented into more than one court. The Family Court does not possess the requisite jurisdiction without referral of certain issues from the Supreme Court; and the Supreme Court has neither the simple procedures for this family of marginal income, por in some areas the auxiliary services to cope with the problems. In this case the solution can be achieved, though with difficulty, because the attorneys for both parties and the court are co-operating as to all procedures. The jurisdiction of the Family Court is generally quite adequate to deal with post-divorce problems in the case of a foreign divorce, but not in the case of divorces adjudged by the Supreme Court of New York.
The troubled family here underwent a divorce in the Supreme Court, Kings County, in 1961. On January 16, 1961, the petitioning mother as plaintiff filed her judgment dissolving the marriage with respondent as defendant, obtaining custody of the two infant daughters of the marriage, the elder now aged 16 and the younger now aged 13%. She also received an award of a modest weekly sum for the maintenance and support of herself and these children, as to which she alleges, and it is found, that respondent fell in arrears for about 12 weeks. The respondent was given weekly visitation rights of which he failed to avail himself. In the course of time, the respondent remarried, and the petitioner acquired a paramour in what is known as a stable household relationship.
More immediately, the younger daughter found her mother’s paramour disagreeable, which led her to transfer her residence *999 without her mother’s permission to the home of her father and stepmother, even though she was no longer familiar with her father or his home. The elder daughter accompanied the younger one for the first three months (January to March, 1968), in order to afford companionship to the younger one, but the elder daughter returned to her mother’s home in March, 1968, asserting that her father’s home is not adequate due to his history of emotional instability (he has required electric shock and other therapy), his alleged alcoholism, the alleged inadequate diet available for the girls, and overpermissiveness in supervision of the girls.
The older girl does not wish to visit her father at this time, and is anxious, as is the mother, for the younger girl to return to the home of the mother in whose custody the 1961 decree placed both children. The younger daughter refuses to return to the home of her mother and the paramour, although she did not resist weekly visitation to her mother and sister as suggested temporarily by this court.
Modification in this single court, of the Supreme Court judgment for support and maintenance, is relatively easy to accomplish; but the abysmal jurisdictional gap in the power of this court to modify, deal with or even to enforce the custody or visitation order of the Supreme Court is astonishing. Even support modification is not simple to resolve because support depends in part on whether the younger daughter is returned to mother or remains with father.
Thus our statutory and constitutional scheme is substantially frustrated by lack of an adequate remedy in any single court, and this troubled family is saddled with the unnecessary burdens of a multiplicity of courts.
By improvisation entailing wasteful effort (including a three-page stipulation and Supreme Court order), and requiring consent as to procedure, from both parties and from the Supreme Court, lest technical litigation in the Supreme Court be needed, I have gathered together all of the strands of jurisdiction into this court. Resort is made to the Supreme Court for its stipulated consent order referring the missing jurisdictional aspects to the Family Court. But such complication, which erects road blocks often in this court if a prior Supreme Court matrimonial or habeas corpus judgment is in effect, is respectfully referred as the subject of inquiry and study by our Legislature for possible remedial amendment of the laws of this State. This problem will assume serious proportions for the first time now that local, as distinct from foreign, divorces have become permissible on *1000 grounds of cruelty, abandonment, imprisonment, judicial and contractual separation for two years (as well as adultery), under the 1966 revision broadening the grounds for divorce in New York. (L. 1966, ch. 254.)
I. on THE ISSUE OS' SUPPORT
An interlocutory judgment of divorce was granted by the Supreme Court, Kings County, in January, 1961 and became final as of course in April, 1961. This judgment predated the creation of the Family Court and the effective date of the current judiciary article of the Constitution, both of which took effect on September 1, 1962. Under these circumstances, a thoughtful opinion, Giancursio v. Giancursio (42 Misc 2d 868) maintains that a Supreme Court order of referral is a prerequisite of Family Court jurisdiction even as to support enforcement or modification. The reasoning is simply that the New York Constitution (art. VI, § 13, subd. c) gives jurisdiction to Family Court to determine applications in matrimonial Supreme Court actions, with the same powers possessed by the Supreme Court, only when referred to the Family Court from the Supreme Court. In Giancursio it is acknowledged that the Legislature appropriately provided that silence or inaction on the part of the Supreme Court amounts to a referral, by deliberate abstention, to the Family Court (Family Ct. Act, §§ 461, 466); but that such silence or inaction by the Supreme Court in exercising the legislatively granted power to retain exclusive jurisdiction cannot be taken as such deliberate abstention if the Supreme Court gave its judgment before the present constitutional and statutory powers of referral by abstention existed.
But it seems logical to go further, once the new Constitution and Family Court Act took effect, to hold that continued inaction by the Supreme Court thereafter is tantamount to the same silent or implicit referral to Family Court in respect to the enforcement or modification of support aspects of matrimonial decrees. True in Giancursio (supra), the respondent opposed petitioner’s application in Family Court for a modification of the Supreme Court award of support, and so the respondent was in effect applying for consideration of whether the issue of referral should be resolved by the Supreme Court at this first opportunity; consequently, in that case the Family Court properly transferred the issue of referability to the Supreme Court.
But here, both parties are content with Family Court exercising power to resolve the issue of support enforcement and/or modification, and so the issue of referral is not being raised. Such a moot aspect need not be passed upon by the Supreme *1001 Court, even though its 1961 judgment in this case also antedated the Family Court Act and the current judiciary article of the Constitution; the Supreme Court is truly silent on the exercise of its authority to retain exclusive jurisdiction over its judgment simply because neither party is requesting the Supreme Court to speak.
To carry consistency to the ultimate limit, it may well be that even a current Supreme Court judgment dissolving a marriage, which is silent on the issue of referral to Family Court for support enforcement, requires a transfer to Supreme Court if the respondent in Family Court raises by motion the issue of referral. (Cf. N. Y. Const., art. VI, § 13, subd. c.) Perhaps a temporary order of support with a stay of final order in Family Court would suffice to give the opportunity to litigate referral. (Cf. Schneider v. Schneider, 17 N Y 2d 123, 124; Matter of Adams v. Rhoades, 56 Misc 2d 249.)
This type of problem, involving the referability of support judgments of the Supreme Court, confronts the Family Court in five distinct factual patterns:
(a) Pre-September 1,1962 (i.e., pre-Family Court) judgments of support by the Supreme Court, neither party wishing to litigate the issue of referability in the Supreme Court — in this posture, the Family Court has jurisdiction without a Supreme Court order of referral, as in the case at bar.
(b) Pre-September 1, 1962, judgments of support by the Supreme Court, one party wishing to litigate the issue of referability in the Supreme Court — here the Supreme Court should decide whether or not to refer, as in Giancursio (supra).
(c) Post-September 1, 1962, judgments of support by the Supreme Court, neither party wishing to litigate the issue of referability in the Supreme Court — Family Court may proceed without a Supreme Court order of referral.
(d) Post-September 1, 1962, judgments of support by the Supreme Court, one party in the Family Court wishing to litigate the issue of referability — here again the Supreme Court should decide whether or not to refer to Family Court.
(e) A Supreme Court judgment of support which expressly retains exclusive jurisdiction in the Supreme Court — obviously, the Family Court must await referral from the Supreme Court.
II. ON THE ISSUES OF CUSTODY AND VISITATION
On these fundamental issues of custody and visitation, a most abysmal jurisdictional gap is left by the laws of this State.
The silences and the abstentions, the express referrals or the retentions of exclusive jurisdiction, among which the Supreme *1002 Court can choose in respect to support enforcements and support modifications in the Family Court, are not the same in respect to custody and visitation enforcement and modification. Instead, only an express referral can be made by the Supreme Court to Family Court, without which the Family Court is without jurisdiction on this subject matter.
Thus in Matter of Bolatin v. Bolotin (29 A D 2d 534) the First Department held that even visitation, a much narrower form of custody, cannot be tampered with by the Family Court, absent an order of referral from the Supreme Court. The entire memorandum is as follows: “ Order, entered July 27, 1967, unanimously modified, on the law to the extent of deleting the provision for suspension of visitation rights of respondent-appellant, and, as so modified, affirmed, without costs and without disbursements, and without prejudice to an appropriate application to the Supreme Court. The judgment of the Supreme Court, County of Nassau, dated September 9, 1963, provides for visitation rights. The sine qua non of jurisdiction relating to visitation in the Family Court is the absence of an order thereon by the Supreme Court. (Family Ct. Act, § 447.) On this record there does not appear to have been any referral of an application relative to custody or visitation to the Family Court pursuant to section 467 of the Family Court Act. This proceeding, to the extent it is concerned with visitation, is within the scope of the subject matter of the judgment of September 9, 1963, of the Supreme Court. It is not a new proceeding, primarily concerned with protection. (Cf. Family Ct. Act, § 842; Matter of Marks v. Marks, 24 A D 2d 1017, affd. 17 N Y 2d 787.) ”
Of course, as the Appellate Division pointed out above, this principle, excluding Family Court jurisdiction, does not apply to a matter in the Family Court founded upon a distinct protective issue rather than a matrimonial issue. So, as illustrated, a “ family offense ” order of protection by the Family Court may transfer custody or change visitation of a minor despite a Supreme Court habeas corpus judgment entered before the family offense made a change necessary by Family Court action. (Matter of Marks v. Marks, 24 A D 2d 1017, affd. 17 N Y 2d 787; Family Ct. Act, §§ 842, 828.) The same freedom in the Family Court to depart from a prior Supreme Court custody award, would of course also apply to a separate more recent adoption proceeding (People ex rel. Levine v. Rado, 54 Misc 2d 843), guardianship proceeding, neglect proceeding (Family Ct. Act, §§ 352, 354, 355, 356, 357, 365, 368, 612, 631, 634), paternity proceeding (cf. Matter of Godinez v. Russo, 49 Misc 2d 66), *1003 delinquency proceeding, and a person-in-need-of-supervision proceeding (Family Ct. Act, §§ 756, 759, 775, 776, 777, 778, 779).*
Here, however, we have no new or distinct protective issue, but merely a petition by mother for enforcement of an old Supreme Court custody award (and support), and a cross application by father for modification (of custody and support). Either parent could have invoked a new protective issue by filing neglect proceedings against the other, but they have chosen not to do so, presumably to avoid exacerbating one another unnecessarily, and to avoid defeat on this issue, preferring to join issue on the simple and less unattractive proposition that each would be the better parent to have custody of the younger daughter.
III. CONSIDERATIONS FOR AMENDMENT OF SECTIONS 467 AND 447 OF THE FAMILY COURT ACT
The courts more commonly interpret the legislative and constitutional intention than do they recommend amendments and improvements. The courts are busy and their staff are without the investigatory and fact-finding and policy-making resources of the Legislature to discharge the vital functions which the Legislature does so well. Nor are the courts as closely accountable to the will of democratic elective process. However, the courts have better access to information on how the legislative policies truly affect thousands of litigants therein, after the Legislature in its wisdom has formulated the broad statutory policies. And so, with respect and deference to our Legislature, I set down here these observations, hopeful, as Chief Judge Stanley H. Fuld of the State of New York, has said, that an opinion “ may dramatize a policy weakness in such a way as to catch the legislature’s eye and induce it to amend the law.” He gave an example in which a dissenting judicial opinion, albeit in a higher court than this one, “ attracted the attention of the Law Revision Commission; that body recommended clarification and, the following year, the legislature passed the necessary *1004 amendments.” (Fuld, “Voices of Dissent,” 62 Col. L. Rev. 923, 927.)
The difficulty in custody and visitation modifications by Family Court, as distinguished from support modifications, of Supreme Court judgments, is not attributable to the Constitution, because support and custody are treated alike there. (N. Y. Const., art. VI, § 13, subd. c.) The difficulty lies in the deliberately different wording of sections 461 and 466 of the Family Court Act on the one hand, providing for silent abstention by the Supreme Court on referability, and, on the other hand, section 467 of the Family Court Act which makes prerequisite express referrals by Supreme Court before the Family Court can deal with a former Supreme Court judgment in “ applications to enforce judgments and orders of custody, and applications to modify judgments and orders of custody ’ ’. Similarly, in Family Court support proceedings, the power of the Family Court to make an order of custody or visitation depends on ‘ ‘ the absence of an order of custody or of visitation entered by the supreme court ”. (Family Ct. Act, § 447. Matter of Bolatin v. Bolatin, 29 A D 2d 534, supra.)
Hence, the parties by stipulation applied, at the suggestion of this court, to the Supreme Court to refer here the custody problems and the visitation problems affecting both daughters.
Sections 467 and 447 of the Family Court Act should receive the benefit of earnest review and consideration by the Legislature as to whether these provisions ought to be amended to conform with sections 461 and 466. There seems no reason why custody and visitation jurisdiction in Family Court should have referral prerequisites different from support jurisdiction. Why should two willing parents desiring to have the Family Court resolve custody and visitation problems in the Family Court be required to ask the Supreme Court to perform the quasi-ministerial act of approving their joint resort to Family Court, when no such express permission is required to modify or enforce a Supreme Court support determination? Why should Mexican courts, but not the Family Court, have full authority to overrule prior Supreme Court custody awards when both parents submit to such courts? Why should Family Court have plenary authority “ to determine an application to modify the custodial arrangement provided in ” an order or judgment in a matrimonial proceeding in a court of competent jurisdiction not of the State of New York, but require express referral to entertain an application to modify a final custodial determination by the Supreme Court?
*1005 IV". THE MORE SWEEPING AMENDMENTS, INVOLVING MATRIMONIAL STATUS ISSUE JURISDICTION, WHICH THE LEGISLATURE MIGHT WISH TO CONFER CONCURRENTLY ON FAMILY COURT AND SUPREME COURT
Such amendment of sections 467 and 447 of the Family Court Act would eliminate the fragmentation of struggling through two courts in the post-divorce situation presented in this proceeding. However, such a reform would not eliminate a far more basic fragmentation: the shuttling back and forth between Supreme Court and Family Court since before the divorce. Status issues are now cognizable in the Supreme Court only; support issues involving the same family can be brought in Family Court before Supreme Court matrimonial actions commence, or, as illustrated in the present case, after divorce or other status has been adjudged.
The Legislature has recently received an authoritative interpretation apparently indicating its broad power to eliminate even these status fragmentations. Thus, any or all plenary custody issues in equity as to minors commenced by petition and order to show cause, and any or all matrimonial status issues* seemingly can be conferred for jurisdictional purposes concurrently on Family Court as well as on Supreme Court. To the extent that the Legislature believes this to be wise, and within its powers, and enacts such reform, a litigant would be able to resolve all of his family’s legal problems in either Family Court or Supreme Court, as the petitioning husband or wife chooses, thus eliminating virtually all fragmentation of a single family’s problems between the two courts. These recent interpretations appear in Matter of Seitz v. Drogheo (21 N Y 2d 181) and in Kagen v. Kagen (21 N Y 2d 532). In Kagen (supra, pp. 536-537) the court explained: “In our recent decision, Matter of Seitz v. Drogheo (21 N Y 2d 181, 185-186), we determined that the right to commence any proceeding not recognized at common law [e.g. matrimonial status issues and child custody petitions] should be considered a new action or proceeding for jurisdictional purposes under section 7 of article VI of the Constitution.” That provision of the Constitution, quoted below, as thus construed, appears to give the Legislature authority to confer all matrimonial issues, and child custody petition issues, concurrently upon the Family Court, by *1006 the language that in ‘ ‘ new classes of actions and proceedings, the supreme court shall have jurisdiction over such classes of actions and proceedings, but the legislature may provide that another court or other courts shall also have jurisdiction and that actions and proceedings of such classes may be originated in such other court or courts.” The Court of Appeals in Seitz (supra, p. 185) indicated and held that all classes of actions not known to the common law when received in this State on July 4, 1776 are “ ‘ new classes of actions and proceedings ’ as to which the Legislature is permitted to confer jurisdiction in other courts, concurrently with Supreme Court. * * * At common law the courts of this State had no jurisdiction over matrimonial matters ”.
Section 13 of article VI of the Constitution of the State of New York, taking subdivisions b, c and d together, and taking these together with section 7 and subdivision a of section 19, make it appear that while the Supreme Court cannot be ousted of any of its jurisdiction, other courts such as the Family Court may be given concurrent jurisdiction unless a particular matrimonial matter is already actually pending in the Supreme Court or already adjudicated in the Supreme Court, or unless the Supreme Court orders transfer of any matter to itself.
Not only would such a legislative decision enable each family to resolve all of its family legal problems in a single court, but it would go far to erase the image of this court as a forum where, in matrimonial problems such as support, custody, visitation and the like, its doors are virtually closed to petitioners unless they be women. (Cf. Family Ct. Act, § 422.) Support petitions brought throughout the State in 1966-1967, embraced 37% of all new proceedings. (Thirteenth Annual Report of N. Y. Judicial Conference, 1968, p. 352.) Paternity petitions, obviously brought only against men, comprise 12% of all of our new petitions. (Ibid.) Family offense petitions, consisting of 14% of all of our new petitions (ibid.), also largely involve only men as respondents, husbands being petitioners in only 3% of the 14%, or less than % of 1% of all petitions (ibid., p. 375). The balance ought to be redressed by giving husbands as well as wives the right to petition in this court for marital status relief such as divorce, separation and annulment, the validity of marriage and of foreign judgments of dissolution of marriage.
Under recently expanded divorce jurisdiction in this State, the required conciliation procedures would fit into the structure of Family Court comfortably. Conciliation has been a vital central aspect of the bulk of the State-wide case load of *1007 the Family Court in support matters and in family offense matters, together more than 50% of all of our new eases in 1966-1967. (See Thirteenth Annual Report of N. Y. Judicial Conference, 1968, p. 352 et seq.) Conciliation or other forms of family counselling have been a substantial element of neglect proceedings as well, which constitute about 8% of our new cases in 1966-1967 (p. 383). Conciliation is effected by the personal presence of the Judge and parties at each court hearing, and conciliation, investigation, evaluation, counselling and treatment are afforded by our probation officers, by our psychiatrists and psychologists, by the marriage counsellors of the great voluntary agencies to whom thousands of referrals are made each year, and even by public and voluntary hospitals, counselling agencies and clinics, and by the after-care personnel of the residential treatment centers for children and the boarding and day care schools, public and private, in which we sometimes place delinquent, ungovernable or neglected children who are involved in much of the other aspects of our jurisdiction.
If the Legislature, in its wisdom, should wish thus to bridge the fragmentation gap by supplying the missing family jurisdiction to the Family Court (concurrently with Supreme Court) but perchance should cautiously doubt its authority so to do, despite the analysis of the Court of Appeals, the Legislature might wish to consider remedying what it may view as its own authority gap, by enacting a proposed constitutional amendment by referendum. Thus, subdivision b of section 13 of article VI can be expanded by a new subdivision “ (8) ” which would provide that the Family Court shall have jurisdiction as follows: “ and (8) over such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law.” This follows the language of the constitutional grant respecting the County Court (art. VI, § 11, subd. a), the Surrogate’s Court (art. VT, § 12, subd. e), and the Civil Court of the City of New York (art. VI, § 15, subd. b). The only courts of record as to which such general power is withheld from the Legislature, gratuitously it would seem, are the Family Court, the Criminal Court of the City of New York, and the Court of Claims. The flexibility of conferring such reorganization powers upon the Legislature, uniformly for all courts of record instead of for some only, was approved and adopted by the 1967 Constitutional Convention; but this important modernization was lost in the welter of other problems which defeated on referendum the single “ package ” product of that Convention.
*1008 V. THE PROCEDURE AND PRINCIPLES GOVERNING THIS CASE
Faced with such a dilemma of lack of statutory jurisdiction until Supreme Court referral of the custody and visitation issues (Family Ct. Act, §§ 467 and 447), and since the attorneys for both parties wish to keep these issues before this court with all of its auxiliary expert resources, this court is mindful of the general policy set. forth in Kaminsky v. Kahn (23 A D 2d 231, 236) where it was said that “ It would be a reproach to the efficiency of our courts if, under such circumstances, the court were to dismiss a complaint and remit the plaintiff to the necessity of bringing a new action ”. Rather than be reproachable for remitting the petitioner or the respondent here to resorting to the Supreme Court for a referral to Family Court of some of the issues of custody and visitation, and then the necessity of bringing a new petitionliere for custody, visitation and support, I have proceeded concurrently with such a stipulated application for such leave to the Supreme Court. The final order is stayed to await such referral. (Cf. Schneider v. Schneider, 17 N Y 2d 123, 124; Matter of Adams v. Rhoades, 56 Misc 2d 249, supra.) Unless this type of unification in our court system is achieved in practice, to that extent New York will not have realized one of the “ major judicial reorganizations ” to which former Chief Judge Desmond attached so much significance. “ No one knows better than I ” said he, “ how far we have still to go.” (See the remarks of Chief Judge Desmond upon his retirement 18 N Y 2d at p. x.)
Anticipating Supreme Court referral as to custody and visitation issues on the basis of the stipulation, and avoiding neglect proceedings which would unnecessarily exacerbate both parents, and which may not be sustainable, I ordered on May 6,1968 that both parents ’ homes be investigated by probation, and I ordered all of the medical and investigational background referred to our expert Court Clinic at 80 Lafayette Street, in Manhattan. There our staff of psychiatrists and psychologists will evaluate and recommend as to the welfare of the girls after reviewing the background and interviewing both parents and both daughters. Attorneys for both parties very much concurred in all of these sociological, investigatory and evaluational methods. (Consent was also given the court to interview, with the help of probation representative, both girls in chambers apart from the presence of parents and attorneys, and to take their ex parte evidence into account.) (Cf. Kesseler v. Kesseler, 10 N Y 2d 445; Matter of Blaine, 54 Misc 2d 248.)
*1009 Indeed, without such unusual resources, probation and psychiatric, the Family Court and any other court might be at a loss to protect these children and to establish which is the better home for them. Thus, see the express statement by the Court of Appeals in Kagen v. Kagen (21 N Y 2d 532, 538, supra) that “ the Supreme Court must exercise its discretion as to whether it would be appropriate to transfer a particular matter to a court of concurrent jurisdiction, possessing unique, specialized capabilities and expertise. In many cases, obviously, this would be the better practice.” At the same page, the Court of Appeals cautioned that “ our decision that the jurisdiction of the Supreme Court has been expanded by the amendment to the Constitution in no way signals a contraction of the jurisdiction of specialized courts such as the Family Court.” That habeas corpus proceedings in a court of general jurisdiction are not usually the best way to resolve child custody problems in a “ delicate family situation” where “ a sensitive investigation is required,” has been held by the First Department in People ex rel. Borella v. Borella (21 A D 2d 871, 872). There the Appellate Division, on appeal from a Supreme Court custody decision, remanded for investigation, hearing and determination to “ Family Court [which] is equipped and competent to handle a matter of this nature.” The Fourth Department has also ruled that a court of general jurisdiction does not usually have the facilities to ascertain the 1 ‘ best interests of the child * * * to which, in the event of conflict, all others must be made to defer. * * * We, therefore, refer the case to Family Court of Oneida County for a full hearing and exploration with the aid of such investigations by and reports from social, psychiatric and other services as are available in Family Court and which the court may deem to be helpful.” (Lockwood v. Jagiello, 24 A D 2d 544, 545. See, also, Matter of O’Shea v. O’Shea, 24 A D 2d 627.)
The weekly visitation as to the now 16-year-old daughter provided in the 1961 divorce judgment, even after the referral to this court of power to deal with this problem, has run afoul of this girl’s resistance. If she remains unwilling to visit with her father, her own rights by this age may have become controllingly superior to those of her father, as illustrated by Matter of Stuart (280 N. Y. 245). However, even such older children are limited, in exercising their rights, to choosing within proper homes and environments; this is the issue being resolved as to mother’s home. The younger daughter, who will be 14 on July 21, 1968, refuses to return to live with her mother and mother’s paramour, *1010 and her welfare must be evaluated in the context also of the father’s home with its strengths and weaknesses.
On June 19, 1968, the next hearing before me will have available the necessary basis for a final determination as to custody, visitation and support. From the first hearing in this court on May 6, 1968 until June 19, 1968, a temporary order of support has been made, modifying downward the Supreme Court order of 1961 because of substantial change of circumstances. The habitual cohabitation of the petitioning ex-wife with a paramour, holding herself out as his wife, eliminates the respondent’s duty to support her, under the discretionary power set forth in section 248 of the Domestic Relations Law. (Cf. Matter of Steinberg v. Steinberg, 18 N Y 2d 492, wherein it is held that the matrimonial law of this State applies equally in Family Court and in Supreme Court.) The temporary residence of the younger child with father eliminates her from support until she may return to mother, except for visitation expenses. Final custody and visitation orders by this court were stayed until Supreme Court referral makes these issues cognizable; the parties consented to the advisory arrangements and supervision by this court as to custody and visitation until June 19,1968.
On May 24, 1968, the Supreme Court ordered referral of all issues herein to this court.

 Where no prior Supreme Court custody determination has been made, the principle of Matter of Chin v. Yen (41 Misc 2d 650) holds that direct constitutional power over custody of minors is granted Family Court. Similarly, the custodial arrangement provided in a foreign (non-Supreme Court) matrimonial judgment, can be modified, on the basis of changed circumstances by the Family Court. (Family Ct. Act, § 654.) Both Family Court and Supreme Court now have all such powers concurrently, the Supreme Court having derived them via the Constitution from the legislative grant to the Family Court. (Kagen v. Kagen, 21 N Y 2d 532; Matter of Seitz v. Drogheo, 21 N Y 2d 181.)

 Actions and proceedings for marital separation, divorce, annulment of marriage and dissolution of marriage, declaration of the validity of marriage and declaration of the nullity of a void marriage, declarations of the nullity or validity of a foreign judgment of divorce, and other matrimonial or family issues or actions.