Millard L. Midonick, J.
The mother of this child petitioned Supreme Court, Special Term, and upon this basis an order was issued requiring the father to show cause why the infant daughter of the parties should not be returned to the mother’s custody.
The issues here concern the procedures and criteria and remedy to resolve custody and visitation affecting this child, as between her divorced parents.
On October 2, 1961, the parties entered into a separation agreement by which this child’s custody was placed with the mother subject to visitation by father. On October 13, 1961 the Inferior 'Court, Geneva, State of Alabama, incorporated this custody agreement in its decree divorcing these parents at the suit of the mother. At that time the child was four years old, the only issue of this marriage.
The 'Special Term of the Supreme Court transferred custody of this child from father to mother on the basis of opposing affidavits, and on default of father, but its order of November 17, 1967 was reversed and remanded to the Special Term for a hearing. The Special Term of the 'Supreme Court then referred the proceeding to the Family Court under section 651 of the Family Court Act.
According to section 654 of the Family Court Act, “ On a showing to the family court that a change of circumstances subsequent to the entry of an order of judgment by a court of competent jurisdiction not of the state of New York, fixing custody in an action for divorce, separation or annulment, the family court shall proceed to determine an application to modify the custodial arrangement provided in such order or judgment.”
*76 While the .above section defines this court’s powers when invoked on petitions initiated in the Family 'Court, this proceeding arose via Supreme Court referral under section 651 of the Family Court Act wherein our jurisdiction embraces “ the same powers possessed by the supreme court 'in addition to [the Family Court’s] own powers ”,
It is questionable whether any substantial distinction exists between the powers or views of Supreme Court and Family Court in such a situation as this. Certainly the best interests of the child must govern the disposition in both courts. (Domestic Relations Law, § 240; cf. Matter of Steinberg v. Steinberg, 18 N Y 2d 492.) All statutes and decisional law must afford justice to this child as she grows older and her environment and needs may change with the passing years. To afford less to this child by adhering with rigidity to her custodial status fixed at the age of four, when she is now 11 and if her best interests require a change, would be to impair her welfare which is the paramount concern of this decision as to her custody. Neither res judicata nor full faith and credit, nor the contract her parents made shortly before their divorce, can impair her due process right to a change of custody from one parent to the other, when her welfare requires a change. (Matter of Adams v. Rhoades, 56 Misc 2d 249; Domestic Relations Law, § 240.) The latter statute provides also that “In all cases there shall be no prima facie right to the custody of the child in either parent.”
Following the guidelines of Kesseler v. Kesseler (10 N Y 2d 445) (cf. Matter of Blaine, 54 Misc 2d 248) the court made available the investigations of the father’s Island Park (Nassau County) home by the Family Court Probation Department of that county and of the mother’s home in Bronx County by the probation staff of the Bronx County Family Court, in the form of written reports to counsel for each of the parents and to the guardian ad litem appointed for the child. By .stipulation of all parties, these reports were received in evidence. Then a study and evaluation by Dr. Melvin I. Fishman, Director of the Family Court Clinic for Mental Health at 80' Lafayette Street, County of New York, was ordered. Dr. Fishman, a consulting psychologist of great skill, learning, experience, and one who is disinterested, studied the probation reports, and interviewed each parent and the child. His report was, by stipulation of all parties in advance, received in evidence and made available to counsel and to the guardian ad litem. Having failed to ask the parties expressly to waive the right to call Dr. Fishman as a witness, however, I deemed myself *77 constrained to permit the mother’s attorney to call him, and he was examined under oath by all parties during the trial. The time taken from heavy schedules by Dr. Fishman or by any of our staff of psychiatrists and psychologists for testifying in courts about this city cannot often be spared unless the staff can be suitably expanded.
The probation reports and Dr. Fishman’s report and opinion were unanimous as to facts and conclusions of fact; the homes of both parents and the objective capabilities of both parents (as well as that of the stepmother whom the father had married) constitute wholesome and proper environments for this child. The child Patty had thrived in both homes after the divorce. If there is any difference, her fine school record in public school until age nine when living with her mother, was slightly improved at parochial school while attending from father’s home until • recently. Both parents, and the stepmother as well, are of the same religious faith as Patty. The father has seen to it that the child was confirmed in her religious faith last year.
"While the mother had the child attending public school in The, Bronx, and the father had the child attending parochial school until this school year in Nassau County, the situation has now reversed itself in that a parochial school of the child’s faith now offers an Opening for her in The Bronx, whereas the child has been transferred this school year to public school within a few steps of her home in Nassau County. The change was made by the father recently in order to relieve Patty of a lengthy bus ride to and from parochial school. Having experienced both types of schools in Nassau, Patty testified in court, that she preferred to stay in the public school. She does very well in all three schools, and would no doubt thrive in her educational program in The Bronx parochial school which she has never yet attended.
The separation agreement of seven years ago required parochial schooling, but the mother did not abide by this clause in view of no availability near her home until now, and now the father finds it 0unwise to compel the child to attend any longer such a school at a cost in time of about half an hour each way. Whether or not the child attends parochial school, her church-going is regular.
Indeed the noncustodial parent has had ample opportunity each weekend, during visitation, to assure religious instruction, and this will continue even though spacing of visitation on alternate weekends seems better to serve the interests of this child. To this visitation plan, all seem to agree. If parochial *78 school were the stumbling 'block to a proper disposition of this child’s custody, I would view a directive or condition addressed to the father to return her to the Nassau County parochial school, as preferable to transferring the child to the mother for this collateral purpose. But I am not disposed to countermand the decision of the custodial parent in the case, since the child’s religious faith is being adequately nurtured. (Mester v. Mester. 58 Misc 2d 791.)
One bright feature of this proceeding, commented upon by Dr. Fishman and apparent to the court, concerns the obvious charm of this child, and this despite the strain of the proceedings. Dr. Fishman’s description of her is that of “ a bright, verbal, responsive and open, attractive 11-year-old youngster who relates to the examiner in an extremely positive and responsive manner.”
Two years ago, Patty at age nine requested her mother with whom she had always lived, to permit her to transfer her residence to the home of her father and stepmother. This the mother voluntarily did, only to discover after some months, that Patty refused to return to the weekday custody of her mother. The child has continued to spend weekends with her mother, almost without any break, but no entreaties would persuade her to leave her father and to resume her former home for two years last past.
She testified in effect that she finds the home of her stepmother and father more satisfying than that of her mother. Patty’s 20-year-old half brother lives in her mother’s home, but his interests are not those of this child. Patty’s three younger half siblings live in her father’s home, and she seems to enjoy the home having the company of children more than that of grown-ups only. She loves both her mother and her father, but is quite angry at both of them for the divorce.
It is my inference that Patty enjoys the more complete home of a father and stepmother rather than that of a mother without a stepfather. She does not articulate the reason for her preference quite this way, but rather in terms of not wanting to leave her father’s home and in terms of her stepmother as a strict but kindly woman who loves her as much as her mother does and who treats Patty with the same consideration enjoyed by the stepmother’s natural children.
Whatever her reasons, this child has been vigorously and unwaveringly insistent on maintaining her major custodial status in her father’s home throughout the last two long years. She maintained her views in the face of her mother’s expressed threats never to see her again, and despite a symbolic confronta *79 tion on father’s front lawn when mother, piqued, deposited the child’s belongings there because the child refused to return to mother’s home.
The child insisted on her right to choose her own home as between two quite adequate parents, during consultation and evaluation with Dr. Fishman, and she persisted when on the witness stand in open court. When cross-questioned by her mother’s attorney, she resolutely clung to this right through her own tears.
Dr. Fishman testified repeatedly that the welfare of this child requires avoidance of compulsion in changing her residence against her wishes. This is not the same, as the mother’s attorney contends, as giving an 11-year-old child the controlling power in choosing her custodial home. Bather, under all these circumstances, in choosing between two good homes each of which seems to make her thrive, but one of which she strongly prefers, this particular child’s welfare at age 11 requires, as our expert witness maintains, deferring to her unwavering wishes. (Cf. Matter of Stuart, 280 N. Y. 245; Matter of Band v. Band, 56 Misc 2d 997; Child’s Wishes as Factor in Awarding Custody, 4 ALB 3d 1396.) As the doctor put it, in his opinion and recommendation at the close of his written evaluation: ' ‘ After examining all parties concerned, it is my judgment that no constructive purpose would be served by forcing this 11-year-old youngster to return to live permanently in her mother’s home. If the child is to return to her mother, then this must be the consequence of a voluntary decision that the child makes.
“In discussing the situation with Mrs. Barry [the mother] I did indicate to her that her relationship with her daughter would be enhanced not by her attempting to terminate contact with Patty when Patty wants contact with her. I would, again, like to reiterate the determination that neither parent could be considered incompetent or indequate as parents.”
If “ change of circumstances ” since the Alabama custody decree must be articulated, they are several: the child is now II not 4; she has a strong preference for the father’s home,, but there is no evidence of such a preference or that it would have been realistic, firm or of substance at age 4; the father’s home did not exist in its present form with stepmother and younger half siblings at the time of divorce; the child became a temporary member of the father’s household for a test period on the mother’s voluntary transfer.
While “ change of circumstances ” may serve to focus the problem, the child’s best interests are not served necessarily by “change of circumstances ” but rather by entire circum *80 stances. It is for this compelling reason that child custody awards have no controlling effect if they are wrong: due process guarantees to the child are superior to all rights of the parents. (Matter of Bachman v. Mejias, N Y 2d 575; Matter of Adams v. Rhoades, 56 Mise 2d 249, supra.)
In accordance with a finding that this child’s best interests require a change of custody from mother to father, it is so ordered. The visitation of Patty with her mother shall be limited to alternate weekends from Friday evening to Sunday evening. Holidays shall be alternated or divided, as Patty prefers. On the child’s birthday she shall spend part of the day with each parent if feasible. The mother may have a summer vacation with Patty of one week at the mutual convenience of child and mother. Additional visitation, as may be mutually agreeable to both parents, may be scheduled. Transportation to mother is to be arranged by mother, and to father by father.
While a periodic review of this custody award might appear theoretically advisable (Note, Divided Custody of Children After Their Parents’ Divorce, University of Louisville School of Law, Journal of Family Law, Spring 1968, pp. 58, 68), the continuing pressure on this child from the mother would create insecurity if court hearings were to resume without leave of a Judge of this court. Moreover, the obvious flexibility of the father, should the child change her preference, would very probably lead to a voluntary transfer from father to mother without any change in the order except perhaps on stipulation. We retain jurisdiction to supervise custody, but there shall be no further hearings except on judicial order therefor on a showing of necessity.