William R. Brennan, Jr., J.
By this writ of habeas corpus, the petitioner, as maternal grandmother of the infant Joseph Rado, formerly known as Joseph Triga, Jr., seeks to obtain visitation privileges with the infant.
Joseph Triga, Jr. was born in 1957 and resided with the petitioner, his maternal grandmother, from 1957 until 1962. The infant’s father is in prison, and his mother, who was addicted to drugs, died in 1960.
In 1963 a dispute arose between the petitioner, as maternal grandmother, and Mrs. Triga, the paternal grandmother, con *844 cerning. custody of the child. The Supreme Court, Bronx County, acting in its role as parens patria of the infant, gave custody of the child to his paternal aunt, Mary Rado, and granted both the maternal and paternal grandparents limited visitation rights. From March 28, 1963, the date of the order, up to the present time the child has lived with his paternal aunt, Mary Rado, and her husband, Anthony Rado. Mr. and Mrs. Rado commenced an adoption proceeding in the Family Court of Nassau County and, by order of that court dated November 23, 1966, they became the adoptive parents of the infant. The questions presented are (1) whether or not the order of adoption superseded the prior order of the Supreme Court setting forth visitation rights to the maternal grandmother, and (2) whether section 72 of the Domestic Relations- Law entitles petitioner as maternal grandmother to rights of visitation.
With respect to the first question, we hold that the order of adoption is controlling and that its effect is to supersede the prior order of the Supreme Court, Bronx County. The Supreme Court order appears to have been the culmination of a proceeding initiated by either writ of habeas corpus or order to show cause for the sole purpose of establishing custodial and visitation rights. In such a proceeding the Supreme Court acts as parens patria of the infant and, motivated exclusively by what is in the best interests of the child, makes a decision which is at best temporary in nature and always subject to review or modification. At the time when that proceeding was argued, it must be remembered that the natural mother had died and that the natural father was incarcerated; It could not seriously be argued that the determination of custody would, for example, he of such a permanent nature as to preclude the natural father upon release from jail from seeking to obtain custody of his natural horn son. The order granting custody to Mary Rado and visitation rights to the petitioner would stand until modified by a subsequent order of the Supreme Court or until another court of competent jurisdiction would make a permanent change in status.
Adoption by its nature is a proceeding which seeks to establish permanent, as distinguished from temporary, relationships. The many safeguards surrounding adoption proceedings are evidence of the permanency which the proceedings envisage. It would appear that the Nassau County Family Court had complete jurisdiction of the adoption proceeding and that it obtained the consents of all those persons whom section 111 of the Domestic Relations Law requires as a condition precedent to adoption. It might he noted that the petitioner did not appear *845 in that proceeding and, further, that she was neither a necessary nor a proper party to the adoption. (Matter of Mendelsohn, 180 Misc. 147; Matter of Anonymous, 47 Misc 2d 139.) As soon as the order of adoption became final, Mr. and Mrs. Rado became the parents of the infant, and the infant, whose name was then changed to Joseph Rado, became the son of those parents. All prior temporary orders with respect to custody and visitation were necessarily extinguished by the adoption.
With respect to the second question, the court finds that the petitioner has no standing to bring this writ. Section 72 of the Domestic Relations Law, which became effective September 1, 1966, provides as follows: 11 Where either or both of the parents of a minor child, residing within this state, is or are deceased, a grandparent or the grandparents of such child, who is or are the parents of such deceased parent or parents, may apply to the supreme court for a writ of habeas corpus to have such child brought before such court ”.
As of November 23, 1966, the date of the order of adoption, in legal contemplation the child’s parents were not deceased even though the child’s natural mother had died. His natural father had consented to the adoption and the adoptive parents became in fullest legal effect his true parents having all the rights and being subject to all the duties which that relationship requires. (See Betz v. Horr, 276 N. Y. 83.)
If section 72 were construed so as to authorize paternal or maternal grandparents to seek custodial or visitation privileges from adoptive parents (many, if not most, of whom bear no blood relationship whatsoever to the adoptive child), such a construction would work as a strong deterrent from adoption. No such construction is indicated.
It may well be that the respondents, Mr. and Mrs. Rado, may feel that it might be in the best interests of the child to maintain some contact with his maternal grandmother through periods of visitation, and this court would urge that they give serious consideration to such a course. As adoptive parents, however, it is exclusively within their own good judgment. The writ is dismissed.