Margaret M. J. Mangan, J.
Respondents move to reargue their prior motion to vacate the judgment, entered November 13, 1969, awarding petitioner visitation privileges with the child Michael Lebovits.
Petitioner is the maternal grandfather of the child, now aged two. The respondents are the child’s father and his paternal grandparents.
After the death of the child’s natural mother (petitioner’s daughter), the petitioner commenced a habeas corpus proceeding in this court for custody of the child. On the return date, the writ was marked withdrawn by consent on condition the petitioner and the child’s maternal grandmother be permitted bimonthly visitation with the child at the respondent’s residence in Baltimore, Maryland. A judgment to that effect was entered November 13, 1969.
The validity of that judgment is challenged on jurisdictional grounds and on the ground the subsequent order of adoption by respondent father’s present wife superseded the judgment and extinguished petitioner’s rights thereunder.
With respect to the jurisdictional issue raised, the court adheres to its prior ruling upholding jurisdiction. The court’s power to grant visitation privileges to a grandparent is ordinarily premised upon residence of the child within the State (Matter of Schiller v. Elliot, 31 A D 2d 612, affd. 25 N Y 2d 949). The infant Michael Lebovits resides with his father in Maryland. However, the respondent father voluntarily submitted himself to the jurisdiction of this court and consented to the entry of judgment granting visitation privileges to petitioner. Having done so, he waived objection to the jurisdiction of the court, and he may not collaterally attack the judgment.
However, the judgment, though valid when entered, did not vest the petitioner with permanent rights to visitation with the child. Provisions in a judgment regarding visitation are ‘ ‘ at best temporary in nature and always subject to review or modification ” based upon a significant change of circumstances (People ex rel. Levine v. Rado, 54 Misc 2d 843, 844).
Subsequent to the entry of judgment herein, the respondent father remarried and his new wife adopted the child. Adoption of the child unquestionably effectuated a permanent change in *832 the child’s status (Domestic Relations Law, §§ 114, 117 ; Betz v. Horr, 276 N. Y. 83 ; Matter of Charles v. James, 56 Misc 2d 1056 ; People ex rel. Levine v. Rado, supra). As of the date of the order of adoption, the adoptive mother became, in the fullest legal sense, the mother of the child, having all the rights and obligations of a natural parent. In the language of the statute, ‘ ‘ The adoptive parents or parent and the adoptive child shall sustain toward each other the legal relation of parent and child and shall have all the rights and be subject to all the duties of that relation” (Domestic Relations Law, § 117).
The legal effect of the foregoing statute, as succinctly stated by the Court of Appeals, is “to make the adopted child the natural child of the adoptive parent (Carpenter v. Buffalo General Electric Co., 213 N. Y. 101, 108), to give the ‘ adopted child the same legal relation to the foster parent as a child of his body ’ (Matter of Cook, 187 N. Y. 253, 260) and * * * ‘ the adoption divests the natural parents of the relation which they had theretofore sustained toward the infant ’ ” (Betz v. Horr, supra, pp. 87-88).
Upon adoption, the infant Michael Lebovits was completely assimilated into a new family unit, which the petitioner herein is not part of. The legal relationship formerly existing between petitioner and the child was terminated by the order of adoption, and the petitioner has no legal right to insist upon continued visitation with the child against the wishes of the child’s adoptive mother and natural father. It would be against the public policy of this State to hold otherwise.
Accordingly, upon re-evaluation of the appropriate statutory and case law, the court concludes that the right of visitation afforded a grandparent by section 72 of the Domestic Relations Law does not survive the subsequent adoption of the child. ‘1 If section 72 were construed so as to authorize paternal or maternal grandparents to seek custodial or visitation privileges from adoptive parents * * * such a construction would work as a strong deterrent from adoption. No such construction is indicated ” (People ex rel. Levine v. Rado, supra, p. 845).
Although petitioner was granted visitation privileges by judgment of this court, the judgment was likewise superseded by the subsequenft order of adoption (People ex rel. Levine v. Rado, 54 Misc 2d 843, supra ; see Matter of Rand v. Rand, 56 Misc 2d 997, 1002). In People ex rel. Levine v. Rado (supra, pp. 844-845) the court held that a prior court order granting visitation to a maternal grandmother cannot be enforced subsequent to thé adoption of the child. The court stated:
*833 “We hold that the order of adoption is controlling, and that its effect is to supersede the prior order of the Supreme Court, Bronx County.
* * *
‘ ‘ Adoption by its nature is a proceeding which seeks to establish permanent, as distinguished from temporary relationships * * * As soon as the order of adoption became final Mr. and Mrs. Rado became the parents of the infant, and the infant * * * became the son of those parents. All prior temporary orders with respect to custody and visitation were necessarily extinguished by the adoption. ’ ’
No valid distinction can be made between an adoption by strangers, as was the casQ in Levine, and an adoption by the spouse of a natural parent, as is the situation in the case at bar. The order of adoption is controlling in both instances.
Under the circumstances, the motion to reargue is granted and upon reargument the cross motion to vacate the prior judgment of this court is granted. In light of this determination, the prior order directing a hearing on the issue of respondent’s alleged contempt of court is likewise vacated.