OPINION OF THE COURT
Felice K. Shea, J.
In this proceeding, brought on by writ of habeas corpus and submitted on an agreed statement of facts, the legal issue presented is whether a maternal grandmother is entitled pursuant to section 72 of the Domestic Relations Law to *329 visitation with a grandchild adopted by his paternal grandparents.
Petitioner is the grandmother of an 11-year-old boy, born out of wedlock to her deceased daughter. The child was adopted in 1972 by respondents, his paternal grandparents. Petitioner has been permitted to see her grandson on occasion, but she has been denied visitation when respondents found it inconvenient. Petitioner asks the court to grant her visitation rights so that a continued relationship with her grandson can be assured. She bases her claim on section 72 of the Domestic Relations Law which confers visitation rights on grandparents in some circumstances.
Respondents argue for dismissal of the writ on the ground that petitioner’s statutory right to visitation was extinguished and she ceased being a grandparent within the meaning of section 72 of the Domestic Relations Law when the child was adopted. They also oppose petitioner’s request for court-ordered visitation on the ground that section 72 of the Domestic Relations Law is unconstitutional insofar as it authorizes an unnecessary invasion into familial privacy. Respondents claim, in addition, that court intervention is unnecessary since petitioner has not been denied the right to visit. Finally, respondents urge that there has been no showing that the child’s best interests require the relief requested.
Petitioner contends that section 72 of the Domestic Relations Law should be construed to authorize visitation after adoption. She maintains, further, that this court has inherent power, as parens patriae, to make any order of custody or visitation which would promote the welfare of a child subject to its jurisdiction. Lastly, she argues that in this interfamilial adoption, the termination of a prior family relationship is not necessary or beneficial for the child.
Section 72 of the Domestic Relations Law[1] gives legislative recognition to the importance of nonparental relationships in the lives of children. It was enacted "to establish a procedural vehicle through which grandparents might assert that visitation of the child * * * is warranted”. (Lo Presti v Lo Presti, 40 NY2d 522, 526.) The "section is not intended to give grandparents an absolute or automatic right of visitation. * * * [T]he question of whether visitation should be granted lies solely in the discretion of the court and must * * * be determined in *330 the light of * * * the best interest of the child”. (Lo Presti, supra, pp 526-527.)[2]
Section 72 reads as follows:
"§ 72. Habeas corpus to obtain visitation rights in respect to certain infant grandchildren.
"Where either or both of the parents of a minor child, residing within this state, is or are deceased, or where circumstances show that conditions exist which equity would see fit to intervene [sic], a grandparent or the grandparents of such child may apply to the supreme court for a writ of habeas corpus to have such child brought before such court; and on the return thereof, the court, by order, after due notice to the parent or any other person or party having the care, custody, and control of such child, to be given in such manner as the court shall prescribe, may make such directions as the best interest of the child may require, for visitation rights for such grandparent or grandparents in respect to such child.”
Section 72 is silent with regard to the rights of grandparents to visit with a grandchild who has been adopted. The statute must be read in conjunction with section 117 of the Domestic Relations Law, which states in pertinent part:
"§ 117. Effect of adoption.
"1. After the making of an order of adoption the natural parents of the adoptive child shall be relieved of all parental duties toward and of all responsibilities for and shall have no rights over such adoptive child or to his property by descent or succession”.
It can be argued that if, under section 117 of the Domestic Relations Law, the natural parents "shall have no rights” over the adoptive child, then a fortiori, adoption extinguishes the rights of a grandparent. On the other hand, as the Fourth Department pointed out in Matter of Scranton v Hutter (40 AD2d 296, 299), section 72 of the Domestic Relations Law provides for the relief sought after notice to "any parent” and the Legislature did not see fit to exclude adoptive parents.
The issue of the rights of grandparents to visit a child adopted by his other grandparents has not been directly addressed by the courts of this State. However, our courts have been confronted with a similar problem when visitation *331 has been sought by a grandparent on a deceased parent’s side of the family after adoption of the child by a stepparent.
Respondents cite People ex rel. Levine v Rado (54 Misc 2d 843) and People ex rel. Herman v Lebovits (66 Misc 2d 830), which held that the legal relationship between grandparent and grandchild ceased upon entry of an order of adoption by the child’s stepfather and the statutory right of visitation did not survive. These cases expressed a concern that if the law were interpreted otherwise, adoptions would be deterred. In 1973, the Appellate Division, Fourth Department, specifically rejected the lower court decisions in Rado and Lebovits and held that "an adoption does not preclude the natural grandparents from applying for a writ of habeas corpus to obtain visitation rights under section 72 of the Domestic Relations Law.” (Matter of Scranton v Hutter, 40 AD2d 296, 299, supra.) The Fourth Department reasoned that the purpose and effect of section 72 of the Domestic Relations Law would be vitiated if it were read to exclude from its ambit the grandparents of a child adopted by his stepparent. It quoted with approval a passage from Matter of Zook (62 Cal 2d 492, 494-496), which stated: "Unquestionably the substitution of adoptive for natural parents serves a great number of social objectives. On the other hand the law should not and cannot ignore the fact that an adopted person may not in many respects be cut off from his natural family. If affection and regard remains between members of a natural family, the law should not in the name of consistency undertake to thwart the expression of those feelings when the encouragement thereof does not hinder the adoptive relationships.”
In the absence of an appellate decision, Scranton is controlling in the First Department (McKinney’s Cons Laws of NY, Book 1, Statutes, § 72) and has been followed by the lower courts. (See People ex rel. Wilder v Director, Spence-Chapin Servs. to Families & Children, 93 Misc 2d 617; Matter of Geri v Fanto, 79 Misc 2d 947.)[3]
The reasoning of the Scranton decision should apply to the facts herein. If the child’s adoption by his grandparents were to cut off petitioner’s right to seek visitation, then the purpose *332 of section 72 of the Domestic Relations Law would be frustrated. It would appear that where the child has been adopted by grandparents, instead of by a stepparent, there is even less reason to sever contact with the natural family. A child adopted by his or her stepparent often must adapt to a new set of grandparents and it is possible that a continued relationship with the deceased parent’s family might inhibit the formation of new ties. (Cf. Barko v Department of Social Servs. of County of Suffolk, NYLJ, July 6, 1978, p 14, col 5.) Here, where the paternal grandparents have adopted, there is no new family to whom the child must adjust.
Respondents’ challenge to the constitutionality of section 72 of the Domestic Relations Law is without merit. It is true that respondents are now the child’s parents and that a parent’s right to bring up his or her children as each sees fit is a right protected by the Constitution. (Pierce v Society of Sisters, 268 US 510.) However, a parent’s right to be free of interference must always give way to valid legislation in the child’s best interests. Furthermore, the court is required to uphold the constitutionality of a statute whenever possible. (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150.) Respondents have failed to meet the heavy burden of demonstrating the statute’s constitutional infirmity.
The expansion of grandparental visitation rights after adoption is consistent with a growing awareness of the need for an adoptive child to know his "roots”. So-called "open adoption” for children who have a relationship with their natural families has been the subject of comment. (See, e.g., Carrieri, The Adopted Child: Visitation by Grandparents, 408 NYS2d Advance Sheet No. 3, Article of Special Interest; Carrieri, The Open Adoption: Parental Visits After Adoption, NYLJ, Sept. 28, 1978, p 1, col 2.) Petitioner in the case at bar relies on statute, but there are indications that a court may have discretion to decree visitation for natural family after adoption when it is in the child’s interest. (See, e.g., Matter of Catala, 57 AD2d 823; Matter of Abraham L., 53 AD2d 669; Matter of McDevitt, 176 App Div 418 [dictum], affd 221 NY 598; Matter ofTasha B., NYLJ, July 28, 1978, p 12, col 6.) One court awarded visitation to a natural father, on consent, in an order of adoption. (Matter of Raana Beth N., 78 Misc 2d 105.) Other evidence of the importance of natural origins can be found in the growing number of suits brought by adoptees for permission to examine their sealed adoption records. (See, e.g., *333 Matter of Linda F. M., 95 Misc 2d 581; Matter of MaxtoneGraham, 90 Misc 2d 107; see, also, Dembitz, Issues in Foster Care and Adoption, NYLJ, Feb. 22, 1979, p 26, col 1, and cases cited therein.)
The court holds that an adoption by a child’s paternal grandparents does not preclude the maternal grandmother from asserting her right to seek visitation under section 72 of the Domestic Relations Law. Respondents have not alleged that visitation is detrimental to the child, but only that they wish to be free of the strictures of a court order. On the record before the court, petitioner has made a showing sufficient to warrant a hearing at which it can be determined whether granting her visitation rights is in the best interests of her grandson. At that hearing, the court can explore whether an order of visitation is necessary and desirable under all the facts and circumstances of this interfamilial adoption.
The writ is sustained to the extent that it is set down for a hearing in Part 5B of this court on March 23, 1979 at 9:30 A.M.

. Added by L 1966, ch 631, as amd by L 1975, ch 431.

. See, also, NY Legis Ann, 1966, p 14, memorandum of Assemblyman Noah Goldstein.

. At least three sister States have statutes which permit grandparental visitation after adoption. (Cal Civ Code § 197.5; 10 Okla St Ann § 60.16; Minn Stat Ann § 257.022.) In addition, courts in New Jersey and Ohio have held that stepparent adoption does not terminate the statutory visiation rights of grandparents. (Mimkon v Ford, 66 NJ 426; Graziano v Davis, 50 Ohio App 2d 83.)