Paul BARRY and Margaret
Barry, Respondents,

v.

Ann BARRALE, Appellant.

No. WD 30757.

Missouri Court of Appeals,
Western District.

April 7, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 5, 1980.

Application to Transfer Denied
June 10, 1980.

Alex Bartlett, Jefferson City, for appellant.

Thomas P. Rose, Jefferson City, for respondents.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

CLARK, Presiding Judge.

Respondents Paul and Margaret Barry brought this action before the juvenile division to obtain a decree establishing scheduled visitation with their grandchildren. Ann Barrale, the children's mother, appeals the judgment which granted visitation and temporary custody to the grandparents.

The unfortunate events culminating in this litigation followed the death of respondents' son James in an automobile accident in 1977. James left surviving him in addition to respondents, appellant, his former wife, and two children, a son born in 1968 and a daughter born in 1971. Prior to James' death, he and Ann had encountered marital problems leading to a dissolution of their marriage in 1976 and an award of custody of the children to the mother. This estrangement of James and Ann apparently did not adversely affect regular visits between respondents and their grandchildren. After James' death, however, the relationship between Ann and the Barrys deteriorated with the eventual severance of all contact and a prohibition by Ann of any visits between the Barrys and the two children.

Assistance by counsel for the parties directed toward resolution of the problem was enlisted but efforts resulted only in meetings which were enforced and hostile. The gulf between Ann, now remarried, and the Barrys continued to widen with predictable disruption of the children's attitudes toward and communication with their

grandparents. In this setting, respondents charged by the subject action that Ann had unreasonably caused estrangement between them and the children and they sought access to their grandchildren by court order.

The foregoing statement of facts omits the details of charges and recriminations exchanged by the parties reflected in more than one hundred fifty pages of transcript. Because the disposition of the case does not depend on assessment of fault for the family enmity now fully matured, we eschew recitation of those details. To the extent, however, that these facts bear on the welfare of the children, they will be noted subsequently.

Appellant first charges that the trial court erred in failing to sustain a motion to dismiss the petition because the statute on which plaintiffs relied to maintain their cause of action, § 452.400, RSMo 1978,[1] does not authorize orders for grandparent visitation except as incident to a decree for dissolution of marriage. In support of this contention appellant notes that the petition as filed expressly adopted § 452.400 as the authority upon which the suit was based, whereas § 452.402 is actually the appropriate reference where grandparent visitation is sought after the death of one parent of a child.

For the limited purpose of addressing this first question, appellant assumes and we also adopt the premise that § 452.400 controls grandparent visitation where both parents are alive and separated by dissolution of the marriage, and that § 452.402 is applicable where one parent is deceased irrespective of the prior marital status. Consideration of this point requires review of the statutes in question and their legislative origin.

Prior to the session of the 79th General Assembly of Missouri, § 452.400, RSMo Supp.1975 contained two paragraphs not material to this action and providing for parental visitation rights after dissolution of a marriage. There was no § 452.402. At that legislative session, Senate Bill No. 430 was enacted and read as follows:

"AN ACT to repeal section 452.400 RSMo. Supp.1975, relating to the granting of certain visitation rights, and to enact in lieu thereof two new sections relating to the same subject.

SECTION

1. Enacting clause.

452.400. Visitation rights—modification of, when—visitation rights to grandparents, authorized.

SECTION

2. Grandparent's visitation rights when one parent deceased—how adjudicated, procedure.

Be it enacted by the General Assembly of the State of Missouri, as follows:

Section 1. Enacting clause.—Section 452.400, RSMo. Supp.1975 is repealed and two new sections enacted in lieu thereof, to be known as Section 452.400 and Section 2. to read as follows.

452.400. Visitation rights—modification of, when—visitation rights to grandparents, authorized.—1. A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development.

2. The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his emotional development.

3. The court may grant reasonable visitation rights to either the paternal or maternal grandparents of the child and issue necessary orders to enforce the decree.

Section 2. Grandparent's visitation rights when one parent deceased—how adjudicated, procedure.—Whenever one parent of a child is deceased and the

---

1. Statute references hereafter all denote RSMo 1978 except as indicated.

surviving parent denies reasonable visitation rights to a maternal or paternal grandparent of the child, the grandparent may petition the juvenile court of the county where the child resides to inquire into the refusal of the surviving parent to allow reasonable visitation. The court shall take jurisdiction over the child and hold a hearing under the same procedure as a hearing under Chapter 211, RSMo., to determine if the visitation by the grandparent would be in the child's best interests or if it would endanger the child's physical health or impair his emotional development. At the conclusion of the hearing, the juvenile court may grant or deny reasonable visitation rights to the grandparent and issue any necessary orders to enforce the decree.

Approved June 1, 1977."

The effective date of the enactments contained in Senate Bill No. 430 above was September 28, 1977, being ninety days after adjournment of the session on June 30, 1977. S. B. No. 430 was first officially published in the session acts, Laws of Missouri, Seventy-Ninth General Assembly, on March 1, 1978, under attestation by the Secretary of State and repeated the content as shown above in the original enactment. The Revisor of Statutes, however, concluded that the portion of S. B. No. 430 designated "Section 2" was not appropriately included in § 452.400 but should be separately designated by a new section, 452.402. The result of this change thereafter appeared in the Missouri Revised Statutes, Supplement 1977, first distributed June 29, 1978, some thirty days after the subject action was commenced. Of course, this change also appeared in the 1978 general revision of the statutes published long after the origin of the present case.

Respondents' petition plainly referred to S. B. No. 430 and its revision of § 452.400, RSMo Supp.1975, as the source of the entitlement to the relief prayed. While respondents would have been informed as to the addition of the new section number by reference to the 1978 pocket part of V.A. M.S., the published session acts, an equally authoritative source, contained no such reference and in the limited time interval here prior to the publication of the regular statute supplement, respondents cannot be faulted for relying on the legislative form of the enactment.

■ The factual allegations of respondents' petition included all the details necessary to bring them within the subject matter of the statute regulating visitation rights of grandparents unreasonably denied access by a surviving parent. Indeed, the petition repeated some of the language which appears in the statute. Even had the petition included no citation of a statute at all, it would prevail against a motion to dismiss if the averments of the petition invoked substantive principles of law entitling the petitioner to relief. The pleader is not obligated to cite or refer to a statute or to use the terms of the statute literally. *Williamson's Estate v. Williamson*, 380 S.W.2d 333, 338 (Mo.1964); *Peer v. MFA Milling Co.*, 578 S.W.2d 291, 295 (Mo.App. 1979).

■ Moreover, it is plain that appellant was not misled by any discrepancy in the statute numbers. In her answer, appellant pleaded various affirmative defenses particularly addressed to a cause of action under § 452.402. The record of the trial proper indicates recognition that the issues were those appropriate to the situation of grandparent visitation when one natural parent is deceased. The trial court correctly overruled appellant's motion to dismiss respondents' cause of action.

Next, appellant contends that the juvenile division of the court had no jurisdiction over the children of appellant because none of the conditions specified in § 211.031 for exclusive original jurisdiction was present. Citing *In the Interest of M.K.R.*, 515 S.W.2d 467 (Mo.banc 1974), for the proposition that the juvenile court is a court of limited jurisdiction with only those powers expressly conferred by the juvenile code, she argues that the juvenile court may only intervene in matters of grandparent visitation with children who are already under the jurisdiction of the juvenile court by reason of ne-

glect, delinquency or adoption. Appellant's position as to this point is, alternatively, that § 452.402 is inoperative to confer jurisdiction on the juvenile court as to a cause of action for grandparent visitation because this section of the statute was not designated as part of the "Juvenile Code" or, that jurisdictional conditions of Chapter 211 impose a limitation upon grandparents who seek the relief provided in § 452.402.

The case of *M.K.R., supra,* involved the proposed sterilization of a mentally deficient female child for which procedure the child's parents sought approval by judgment of the juvenile court. No statute invests the juvenile court with jurisdiction or power to order sterilization nor is such authority conferred on any court in the state. The proponent petitioners, however, contended that broad interpretation of Sections 211.011, 211.171 and 211.181 gives the juvenile court power to deal generally with matters affecting the health and welfare of the child, and further, the juvenile court as a court of general jurisdiction has the powers of a court of equity encompassing subjects not expressly set out in the code. This contention was rejected by the court in its holding that the jurisdiction of the juvenile court is limited to that expressly conferred by the juvenile code.

In the present case, respondents' asserted cause of action is squarely within the subject matter of § 452.402 by which the legislature expressly conferred on the juvenile court the jurisdiction to hear and determine issues as to grandparent visitation. While the language of the opinion in *M.K.R.* taken literally and out of context does confine juvenile court jurisdiction to subjects included in the juvenile code, no contention was made in that case by the parties that the power to order sterilization was to be found anywhere else in the statutes. It was thus unnecessary for the court to consider or rule on the efficacy of statutes appearing outside the juvenile code but conferring subject jurisdiction on the juvenile court.

The parties have cited no case, and independent research has disclosed none, which

declares that powers conferred upon the juvenile court by legislative enactment are effective only if designated as part of the juvenile code. It is important here to observe that the subject case does not involve extension of juvenile court jurisdiction by inferential expansion beyond express statutory authority nor by implying powers conferred upon courts of general jurisdiction, both of which contentions were advanced in *M.K.R.* and rejected. Here, the legislature has expressly enlarged the jurisdiction and authority of the juvenile court to include the subject of grandparent visitation where one parent is deceased. It is only by the fortuitous choice of the Revisor of Statutes that the section in question appears in Chapter 452 and not in Chapter 211.

While confinement of the juvenile court to subjects prescribed by the legislature and the concomitant limitation of juvenile court powers is a precept firmly entrenched in the case law, *In re K___W___H___,* 477 S.W.2d 433 (Mo.App.1972); *In re A___N___,* 500 S.W.2d 284 (Mo.App.1973), the juvenile court is, nonetheless, a constitutional court. By § 211.021(3), the juvenile court is defined to be that division of the circuit court sitting as the juvenile division. The circuit court, of which the juvenile court is one division, is by Art. V, § 14(a) Mo.Const. 1945, amended 1976, possessed of original jurisdiction over all cases. Within this constitutional structure which confers general case jurisdiction, the legislature exercises its authority to designate subjects, conditions and exigencies which warrant exercise by the juvenile court of jurisdiction in the affairs of children. This legislative power is particularly evidenced in statutes authorizing judicial intervention between parent and child. *In Interest of Dimmitt,* 560 S.W.2d 368, 371 (Mo.App.1977).

■ Thus it is that the legislature provides the subject guide for matters within the sphere of juvenile court business, and, having designated such cases as appropriate for judicial action, jurisdiction lodges in the juvenile division of the circuit court by constitutional authority. Nothing in this scheme of legislation and jurisprudence re-

quires or even suggests that the legislature is limited in its law-making function to statutes bearing the imprimatur "Juvenile Code" nor is the existing juvenile code immune from deletions, additions or modifications which revise the field of cases within the original jurisdiction of the juvenile court. In short, the legislature may establish classes of cases and subjects affecting the affairs of children and provide that such matters are of a nature particularly suited to disposition in the juvenile court.

■ The legislative directive as to grandparent visitation is clear, as is the allocation of such cases to the juvenile court for disposition. Appellant's argument that this must be rendered ineffective because of the placement of the statute outside the juvenile code is unsupported either by precedent or analysis and is found to be without merit.

Appellant's next succeeding two points focus on factual questions and are readily considered jointly. She contends, first, that the trial court did not find, and the evidence does not reveal, any denial by her of reasonable visitation rights to the Barrys with their grandchildren, at least after the effective date of S. B. No. 430; and, second, that the demonstrated hostility of the children toward the Barrys belies the trial court's conclusion that visits would be in the best interests of the children. On these grounds appellant suggests that this court should reverse the decision on an independent review of the evidence in which review no deference need be accorded the findings of the trial court.

The scope of appellate review in court-tried cases is sufficiently well known after recurrent references to the standards in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), so that these familiar guides need not be restated. Additionally it is to be noted that neither party in this case requested findings of fact by the court nor were controverted issues specified as provided in Rule 73.01(1). All fact issues are therefore deemed to have been found in accordance with the result reached. *First Fla. Bldg., Inc. v. Safari Systems, Inc.*, 570 S.W.2d 728, 730 (Mo.App.1978). We are also governed in our review by the postulates that the judgment under review is presumed to be correct, that the burden of proving it incorrect is on the appellant and that the judgment must be affirmed if it could have been reached on any reasonable theory. *Snadon v. Gayer*, 566 S.W.2d 483, 491 (Mo.App. 1978); *Sides Const. Co. v. Arcadia Valley R-II Sch. Dist.*, 565 S.W.2d 761, 766 (Mo. App.1978).

A review of the evidence in this case reveals the emergence of ill feeling and antipathy between appellant and Mrs. Barry in particular following the death of James Barry, an attitude and opinion which apparently had been dormant in earlier times. Under these circumstances appellant expressly refused to permit visits between the Barrys and the children and studiously avoided any personal contact between herself and the Barrys and discouraged their attempts at visitation. While some offers of restricted visits in appellant's home and in her presence were later extended, the evaluation of such proposals as constituting reasonable visitation rights under the terms of the statute was one of the issues posed to the trial court. The children themselves were reported as being unwilling to visit their grandparents, although in earlier years a close relationship with frequent visits in the Barry home was apparently the rule. Minimal insight is required to conclude that the children had made no independent decision to reject association with the Barrys but were merely reflecting their mother's attitude conveyed to them in their home environment.

Appellant misconceives and inappropriately limits the content of § 452.402. No requirement is there made for an express demand by grandparents to exercise rights of visitation and a rejection formally expressed, nor is there an exoneration of conduct which occurred prior to the effective date of the statute and condemnation of conduct which occurred thereafter. Quite simply, § 452.402 empowers the court to examine grandparent visitation after petition, to evaluate the best interests of the

children and to order reasonable visitation when the parties cannot themselves resolve the question and when visitation would benefit the children. In addressing such matters of family and social intercourse, formal rituals are neither contemplated nor appropriate.

■ Upon the evidence in this record the conclusion is inescapable that the Barrys have no expectation of access to their grandchildren in a comfortable setting conducive to reestablishing a relationship unless the conditions are prescribed by a court order. Of necessity, the judgment presupposes that the trial court so found and that it similarly concluded the conditions imposed by appellant in restricting and discouraging visitation were unreasonable. There is no substantial evidence for a contrary result.

■ As to the best interests of the children and the potential for impairment of their physical health and emotional development, however, a decision is less readily attained. In the subjective context of this issue, depending as it does on evaluation of factors not readily measured, it is particularly appropriate to consider the admonition in *Murphy v. Carron, supra,* that the judgment should be set aside on appeal as against the weight of the evidence only with caution and with a firm belief that it is wrong. The statement of this proposition is sufficient to demonstrate that the decision of the trial court here is entitled to deference particularly by reason of its superior position having the parties personally present. We cannot and do not conclude that possible physical and emotional damage to the children, beyond that which has already occurred, will be the necessary consequence of this judgment. Arguments of appellant to the contrary on factual issues are rejected.

Appellant next raises, as she did in her answer and at the time of trial, the contention that state intervention between parent and child violates rights reserved under the Ninth and Fourteenth Amendments to the Constitution of the United States and Art. I, § 10, Constitution of Mo., 1945. Obliquely, she suggests that a declaration as to the constitutionality of the statute is not in issue, only the invasion upon her rights by the judgment ordering scheduled visitation with the Barrys. Cited principally in support of appellant's point are *Meyer v. State of Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), *Pierce v. Society of the Sisters of the Holy Names,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) and *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 328, 13 L.Ed.2d 339 (1965). The substance of appellant's claim is that the parent-child relationship and the conduct of affairs in the family home are constitutionally protected against government interference.

The distinction between any constitutional infirmity in § 452.402 and in the decreed entered in this case is not readily apparent. The authority for judicial determination of grandparent visitation rights is, as earlier described in this opinion, solely derived from the statute. In this case both the claim of the petition and the relief granted relied entirely on the statute for vitality, no other ground for jurisdiction of the subject matter having been asserted. The point must therefore be considered on the premise that the judgment is derivative of the statute and has no independent source for validity.

The recent date for enactment of S. B. No. 430 explains, in part, an absence of prior case authority in Missouri on the subject. Other states, however, have adopted similar statutes in recent years, among which are Arkansas, California, Florida, Georgia, Kansas, Louisiana, Michigan, Minnesota, New Jersey, New York, Oklahoma and Texas[2]. In Texas and New York, judi-

---

**2.** Ark.Stat.Ann. § 57–135 (Supp.1979); Cal.Civ. Code § 197.5 (Deering Supp.1979); Fla.Stat. Ann. § 68.08 (West Supp.1979); Ga.Code Ann. § 74–112 (Supp.1976); K.S.A. § 38–129, § 38–130 (1973); La.Civ.Code Ann. Art. 157 (West Supp.1980); Mich.Comp.Laws § 722.27a (Supp. 1979); Minn.Stat.Ann. § 257.022 (West Supp. 1980); N.J.Stat.Ann. § 9:2–7.1 (West 1976); N.Y.Dom.Rel. Law § 72 (McKinney 1977); Okl. Stat.Ann. Tit. 10, § 5 (West Supp.1980); Tex. Family Code Ann. Tit. 2, § 14.03(d) (Vernon Supp.1980).

cially enforced grandparent visitation has withstood constitutional attack. *DeWeese v. Crawford*, 520 S.W.2d 522 (Tex.Civ.App. —Houston 1975); *Simmons v. Sheridan*, 414 N.Y.S.2d 83, 98 Misc.2d 328 (S.Ct.1979). These cases stress the valid state interest in the welfare of children which is paramount to the right of the parent to direct the upbringing of the child. The cases cited by appellant are not inconsonant with this concept.

Missouri has long followed the doctrinal line which submerges freedom of choice in parental direction of the child to an overriding state interest in protecting infants. Thus, in *Ex parte Badger*, 286 Mo. 139, 226 S.W. 936 (banc 1920), the court upheld the exercise of equity jurisdiction to protect the personal rights of infants, "even from their parents." *Badger, supra*, at 938.

In *Minor Children of F.B. v. Caruthers*, 323 S.W.2d 397 (Mo.App.1959), the court was confronted with a proceeding in habeas corpus brought by the mother to regain custody of her children who had been placed with the director of welfare by the juvenile court. The claim was there made that the statute authorizing placement of neglected children was unconstitutional on Fourteenth Amendment grounds. Citing *State ex rel. Cave v. Tincher*, 258 Mo. 1, 166 S.W. 1028 (1914), the court held that the state may promote the well-being of children, despite the natural rights of parents in matters of care, control and education, and the Constitution is to be construed, if possible, not to interfere with the legitimate exercise of this state function. To like effect was the decision in *Morrison v. State*, 252 S.W.2d 97 (Mo.App.1952), which dealt with a claim of invasion of religious freedom depriving the parent of the right to select or reject medical treatment for his child on Biblical grounds.

■ Admittedly, the subject case does not involve life-threatening illness, as was the case in *Morrison*, nor potential malnutrition, as was the case in *Minor Children of F.B.*, but the basic concept of a state interest in promoting the child's welfare nonetheless undergirds and is expressed in § 452.402. While grandparents will normally be the initiating parties, the statute directs the court to respond to the child's best interests and thus the proceeding serves the legitimate state purpose of promoting and protecting the child's welfare. On the authorities cited, statutes of this import, although in derogation of unfettered parental choice and control, are a valid expression of state interest and are not constitutionally infirm.

■ Finally, appellant challenges that portion of the court's judgment which purports to award temporary custody of the two children to the Barrys once each month from 9:00 a.m. on Saturday to 7:45 p.m. on Sunday. Appellant asserts that § 452.402 includes no provision for an award of custody, only rights of visitation. The language of the subject order does indeed use the term "custody," a word which has particular implication in matters of domestic and family relations. We are inclined to the view that the trial court did not intend by use of the word "custody" any broader rights than the visitation authorized by the statute, but any misapprehension in this respect must be dispelled. The statute relates only to visitation, it does not purport to authorize adjudication of custody, temporary or otherwise, and it may not be employed as a vehicle for a custody order.

By the terms of § 452.402, the court is granted wide latitude not only in ordering grandparent visitation but in tailoring orders for enforcement of its decree. In most cases, general orders for visitation will suffice because experience frequently demonstrates that agreements between the parties as to details of date and location are more satisfactory than court imposed schedules which by nature lack flexibility. In the subject case, the trial court is best situated to evaluate the content of its order granting visitation, but the order must be revised to eliminate any award of custody.

The judgment heretofore entered in this cause is reversed and the case is remanded to the juvenile court with instructions that the judgment be re-entered with the following decree:

Wherefore, it is ordered, adjudged and decreed by the Court as follows:

1. That visitation with Shannon Barry and Courtney Barry by their paternal grandparents should take place, and

2. That such visitation shall be conducted from the hour of 9:00 a.m. on the third Saturday of each month to the hour of 7:45 p.m. on the third Sunday of each month out of the presence of defendant and at such place or places as plaintiffs may from time to time and in advance designate, and

3. That additional or substitute visitation may be arranged by mutual agreement of plaintiffs and defendant upon reasonable telephonic notice by either, and

4. That the costs in this matter should be evenly divided between the plaintiffs and the defendant and that the Guardian Ad Litem should be awarded $750.00 for his services to the minor children in this cause.

All concur.