Jeff BROWN *v.* STATE of Arkansas

CR 86-29                    725 S.W.2d 544

Supreme Court of Arkansas
Opinion delivered March 9, 1987

*Hurst Law Office*, by: *Q. Byrum Hurst, Jr.*, for appellant.

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Jeffery A. Brown has appealed from the denial of a Rule 37 petition.

Brown and Mark Henderson were charged with the capital felony murders of Steve and Diane Francis committed in connection with a robbery. Their bodies were found in the front seat of their car in Arkadelphia on the morning of January 31, 1982. Each had been shot in the back of the head. A few days later Brown and Henderson were arrested in North Little Rock on other charges. Attorneys Herman Hankins and John Thomas were appointed to represent Brown.

On April 1 Brown withdrew his plea of not guilty pursuant to a plea agreement by which Brown agreed to testify against Mark Henderson and the charges against Brown were reduced to murder in the first degree.[1] The trial judge approved the agreement and accepted Brown's plea of guilty. Brown was sentenced to life imprisonment.

---

[1] Henderson was later tried, convicted and sentenced to life without parole.

In February of 1986 Brown filed a petition under A.R.Cr.P. Rule 37. He contends his plea of guilty was not voluntarily entered and that he did not receive competent representation. Following a hearing the trial court denied the petition and Brown has appealed. We affirm the trial court.

Brown's first argument is that the trial court failed to make written findings and conclusions of law pursuant to Rule 37.3(a). However, after appellant's brief was filed, the record was remanded to the trial court on the joint petition of the parties and written findings and conclusions were entered by the trial court on June 30, 1986, rendering that issue moot.

Another point of contention is that appellant was denied effective assistance of counsel in that Brown's attorneys did not competently explain parole eligibility and therefore the plea was not voluntarily, knowingly and intelligently made. No authority is cited for the assertion that counsel must be able to explain parole eligibility and procedures, and we are aware of no such requirement. Too many variables exist, including the conduct of the defendant during incarceration.

In *Haywood* v. *State*, 288 Ark. 266, 704 S.W.2d 168 (1986) we held that a petitioner under Rule 37 may not collaterally attack the voluntary character of a guilty plea merely by demonstrating that some advice as to parole eligibility is erroneous. We said the issue was whether counsel's advice was competent, taking into account the inherent uncertainty in advising a defendant about pleading guilty.

Hankins testified he was not well versed in parole procedures and made no assurances to Brown about parole, only that it would depend on his own actions while he was in the penitentiary. Thomas said Brown was told that prospects for parole would depend on policies of the Department of Correction and on his own behavior—that he *possibly* could be eligible anywhere from nine to fifteen years into his sentence. The trial court found that Brown's plea of guilty was made knowingly and intelligently after being fully advised of his rights, and appellant has not shown that finding to be against the preponderance of the evidence. *Williams* v. *State*, 272 Ark. 98, 612 S.W.2d 115 (1981).

Appellant also maintains that his plea was coerced, that

he was told by his counsel that since the victims were white and he was black he would be sentenced to the electric chair by an all white jury. We find no support for this argument anywhere in Brown's testimony at the hearing on his petition, other than a statement that Hankins advised him to take life, or "they're going to give you the electric chair." But Hankins testified Brown was never told he was going to the electric chair and we cannot say the trial court's finding was clearly against the preponderance of the evidence.

We do find testimony by Brown that when he entered his guilty plea and was asked by the circuit judge if he was pleading guilty because he was guilty and for no other reason, he said he was entering the plea not because he was guilty, but because he "was involved in that situation":

Q: (By the prosecutor): You told Judge Lookadoo all that?

A: Yes, I said it because my lawyer stopped me and said, 'He just means yes, Your honor.' Because he asked me, are you pleaing guilty because you are guilty. I said, I'm pleaing guilty because the Court will find me guilty an accessory and not because I committed a charge. And, when I was in the process of saying this, my attorney, Mr. Hankins stopped me and said yes, he means yes, Your Honor. Now, you can draw your tapes out and replay them and I know I said this and I know he said that.

On finding that allegation in the proceedings on the Rule 37 petition, we ordered, pursuant to ARAP Rule 6(e), a transcript of the proceedings on the guilty plea. That material was promptly supplied and has been examined. We find nothing in those proceedings consistent with the allegation:

BY THE COURT:

Gentlemen, I understand from the prosecuting attorney's office that Mr. Brown desires to change his plea.

BY MR. HANKINS:

That is correct, Your Honor.

BY THE COURT:

I'm assuming that you desire to withdraw his motion for transfer and change of venue.

BY MR. THOMAS:

That's right.

BY MR. HANKINS:

That's right, Your Honor, we will withdraw those at this time.

BY THE COURT:

Mr. Brown, do you understand what we're saying about withdrawing your motions?

BY MR. BROWN:

Yes, sir.

BY THE COURT:

Have any threats or any promises been made to you to induce a plea?

BY MR. BROWN:

No, sir.

BY THE COURT:

I'm assuming that any plea made by you would be as a result of an agreed recommendation, is that correct?

BY MR. HANKINS:

Yes, sir, that's correct.

BY MR. THOMAS:

(Nods his head yes)

BY MR. BROWN:

Yes.

BY THE COURT:

As a recommendation, Mr. Brown, I am not bound by

it. As a plea bargain, I am bound by it, dependent upon pre-sentence investigation and so forth. Has that been explained to you?

BY MR. BROWN:

Yes, sir.

BY THE COURT:

Did you prepare a statement in advance of a plea?

BY MR. HANKINS:

No.

BY MR. THOMAS:

No.

BY THE COURT:

I believe, Mr. Arnold, the plea is to be taken on first degree?

BY MR. ARNOLD:

Yes, sir. It would be the recommendation of the State anticipating a plea that we would reduce to first degree murder.

BY THE COURT:

Is that the understanding?

BY MR. BROWN:

Yes.

BY MR. HANKINS:

That's our understanding.

BY THE COURT:

All right, Mr. Brown, as to the charge, how do you plead?

BY MR. BROWN:

Guilty.

BY THE COURT:

Are you pleading guilty because you are guilty.

BY MR. BROWN:

Well, yes.

BY THE COURT:

No, don't say well, yes. Either you're guilty or you're not guilty.

BY MR. BROWN:

Yes.

BY THE COURT:

Are you pleading guilty because you are guilty? ··

BY MR. BROWN:

Yes, sir.

BY THE COURT:

Is there any doubt in your mind?

BY MR. BROWN:

No, sir.

BY THE COURT:

Gentlemen, do you all concur in his plea?

BY MR. THOMAS:

Yes, we do, Your Honor.

BY MR. HANKINS:

We do.

Appellant's final point concerns a statement given by Brown shortly after his arrest in North Little Rock. The statement denied any involvement by Brown in the murder of Steve and Diane Francis except being present in the car when Henderson shot them both. The incriminating part of the statement was that Brown acknowledged that before he and Henderson got into the

car Henderson had told him he planned to kill Steve Francis to get his marijuana. Brown maintains he did not take the remark seriously.

The contention now made is that Brown's counsel should have moved to suppress the statement because it was induced by threats and intimidation. However, the officers denied any coercion or threats and the trial court's factual findings rejected that contention. *Core* v. *State*, 265 Ark. 409, 598 S.W.2d 581 (1979). Hankins testified that Brown was talking to anybody who would listen and it appeared there was "absolutely no grounds" for suppression of Brown's statement.

■ The burden Brown assumes in alleging ineffective assistance is that counsel's conduct so undermined the adversarial process that it cannot be relied on as having produced a just result. *Strickland* v. *Washington*, 466 U.S. 688 (1984). Under the law we are constrained to indulge a strong presumption that the conduct of Hankins and Thomas in Brown's defense came within a wide range of reasonable professional competence. *Strickland* v. *Washington, supra.* Brown's bare allegation that they should have moved to suppress his statement is not sufficient to defeat that presumption. In this connection we note that Brown's counsel filed a number of motions in his behalf: a motion for severance, a motion for discovery, a motion to transfer to juvenile court, a motion for a change of venue with affidavits and exhibits, and a motion for a psychiatric examination. There is no reason to assume counsel would not have filed a motion to suppress if they believe that grounds existed.

■ Brown insists he was free of any culpable intent in this unusual case. But it is clear the state expected to make a case of capital felony murder against him by showing that he knew ahead of time that Henderson intended to kill Steve Francis, was present when the murders were committed, and that he and Henderson left the community together promptly after the crimes were committed. We cannot say that Brown was ill-advised to choose a life sentence in preference to the alternatives.

Affirmed.

HICKMAN, J., not participating.