THOMAS, Judge,
concurring specially.
I agree with the main opinion that the juvenile court lacked jurisdiction to enforce or modify the September 4, 2009, judgment. However, I reach that conclusion for a different reason than the one expressed in the main opinion. I cannot agree that the use of the term “file closed,” or other similar terms, should be construed to terminate the continuing jurisdiction of a juvenile court under Ala.Code 1975, § 12-15-117(a). The indication by a juvenile court that it does not anticipate further review at its instance does not necessarily foreclose resumption of jurisdiction at the instance of a party to the proceedings. Reasons for continuing jurisdiction would vary, depending on the case, and could include enforcement or modification actions, when those actions may be properly instituted in the juvenile court. Instead, I conclude that the effect of the adoption judgment on the dependency judgment was to terminate the jurisdiction of the juvenile court to enforce or modify the September 4, 2009, judgment.
“ ‘The right of adoption ... is purely statutory, and was never recognized by *1185 the rules of common law.’ Hanks v. Hanks, 281 Ala. 92, 99, 199 So.2d 169, 176 (1967). ‘Adoption ... is a status created by the state acting as parens patriae, the sovereign parent.’ Ex parte Bronstein, 434 So.2d [780,] 781 [ (Ala.1983) ].”
Ex parte D.W., 835 So.2d 186, 190 (Ala.2002). Pursuant to Ala. Code 1975, § 26-10A-29(a), “[a]fter adoption, the adoptee shall be treated as the natural child of the adopting parent or parents.” After the judgment of adoption, the maternal aunt and uncle no longer had custody by virtue of the September 4, 2009, judgment; they became the natural parents of the child by virtue of the adoption judgment. With that status comes the superior right to custody of the child. Steed v. Steed, 877 So.2d 602, 605 (Ala.Civ.App.2003); Douglas v. Harrelson, 454 So.2d 984, 986 (Ala.Civ.App.1984).
The changed statuses of the child and of the maternal aunt and uncle are pivotal. As our supreme court explained in Ex parte Bronstein, 434 So.2d 780, 781-82 (Ala.1983), “[a]doption is not merely an arrangement between the natural and adoptive parents, but it is a status created by the state acting as parens patriae, the sovereign parent_” The adoption judgment, in creating the new legal statuses of the child and the maternal aunt and uncle, extinguished the visitation rights of the maternal great-grandparents provided in the September 4, 2009, judgment. See People ex rel. Levine v. Rado, 54 Misc.2d 843, 845, 283 N.Y.S.2d 483, 485 (N.Y.Sup.Ct.1967) (holding in a case remarkably similar to this one that a previous court order awarding a paternal aunt custody and a maternal grandmother visitation rights was extinguished by the adoption of the child by the paternal aunt and her husband based on the permanent change in status wrought by the adoption). This result obtains because the custody and visitation judgment was not a permanent change of status but was instead a temporary determination of the custodial situation serving the best interest of the child at the time and under the circumstances then existing, which is always subject to modification. As our supreme court has explained:
“[B]y its very nature, custody is always temporary and never permanent. Although the temporary custody of a child may have been placed with someone, the court always retains jurisdiction to modify custody under the appropriate circumstances. This is to say that temporary custody is actually permanent custody subject to change.”
Ex parte J.P., 641 So.2d 276, 278 (Ala.1994).
The status that an adoption judgment conveys, however, is not subject to modification upon a showing of changed circumstances. Although an action to determine custody incident to a divorce or to prove dependency of a child under new circumstances could affect that status, the action would be a new action. A previous custody or dependency order relating to a child based on his or her former status could not survive the change in status wrought by the adoption judgment or else it would undermine the permanency of the adoption judgment and the status it conveys.
Although earlier cases, like Evans v. Rosser, 280 Ala. 163, 166, 190 So.2d 716, 718-19 (1966), and the case on which it relies, might, at first glance, indicate that the adoption judgment did not oust the juvenile court of jurisdiction to enforce its 2009 judgments, I do not believe that those cases prevent the conclusion I reach. Evans does state that “[a]doption proceedings cannot defeat [the power of the equity court to withdraw custody from a natural or adoptive parent], and do not judicially *1186 determine the right of custody as against a natural parent,” 280 Ala. at 166, 190 So.2d at 719; however, that particular statement of law appears to be dicta, because it was not required to support the court’s holding that the adoption decree under review was properly entered without the consent of the father, who had “ ‘lost guardianship of the child through divorce proceedings.’” 280 Ala. at 165, 190 So.2d at 718. In addition, the case upon which Evans relies, Praytor v. Cole, 247 Ala. 259, 260, 23 So.2d 713, 713 (1945), indicates that the key word in that particular quotation is the word “proceedings.”
In Praytor, our supreme court considered whether an adoption proceeding, begun by maternal grandparents before the father sought custody of the child in circuit court, would prevent the circuit court from exercising its equity jurisdiction over the custody of the child. Praytor, 247 Ala. at 259, 23 So.2d at 713. The Praytor court decided that the pending adoption proceeding did not prevent the circuit court from exercising its equity jurisdiction over the custody of the child. 247 Ala. at 259-60, 23 So.2d at 713. Of importance to the holding in Praytor was the fact that the adoption proceeding had not concluded. 247 Ala. at 260, 23 So.2d at 713. Under the 1940 version of the adoption code, if an adoption petitioner proved to the satisfaction of the probate court that an adoption would be in the best interest of the child, the probate court could enter an interlocutory order regarding the adoption; a final adoption decree could not be entered until the child had resided with the petitioner for at least one year and had been visited on a quarterly basis by an official from the Department of Public Welfare, the precursor to what is now the Department of Human Resources. Ala.Code 1940, Tit. 27, § 4. Because the adoption had not been concluded in Praytor, the court properly determined that the custody of the child could still be determined by the circuit court exercising its inherent equity power over the custody of the child. 247 Ala. at 260, 23 So.2d at 713.
The situation in the present case is different than the situations presented in either Evans or Praytor. The adoption in this case has been concluded. Although the Evans court appeared to determine, in dicta, that even a final adoption decree did not “judicially determine the right of custody as against a natural parent,” 280 Ala. at 166, 190 So.2d at 719, that holding was questionable then and is clearly incorrect under the present adoption code. Although a pending adoption proceeding does not determine the custody rights of competing parties, a completed adoption reduced to a final judgment does necessarily determine the custody rights of a natural parent. Section 26-10A-29 clearly states that the rights and responsibilities of the natural parents, except in the case of a spouse of an adopting stepparent, are terminated. Collateral attacks against an adoption are limited to a period of one year, except in cases where the adoptee has been kidnapped or in cases of fraud. Ala.Code 1975, § 26-10A-25. The finality of an adoption judgment under the present adoption code is in stark contrast to earlier adoption codes, which permitted either the child or the adopting parent or parents to petition to have the adoption annulled. See Ala.Code 1907, § 5202; Ala.Code 1923, § 9308. Even in the 1940 Alabama Code, the adoption could be set aside if the adopting parents failed to perform their duties to the child “faithfully” or, in situations where the adopting parent or parents were unaware of the possibility, where the child developed certain conditions. Ala. Code 1940, Tit. 27, § 4.
Reliance on Evans and older cases is problematic, partly because of the changes in our adoption code over the years and *1187 partly because those cases also rely in large part on the equity powers of the circuit court, which give that court inherent power to determine the custody of children. See, e.g., Wright v. Price, 226 Ala. 468, 147 So. 675 (1988). The juvenile court, unlike the circuit court, is a court of limited jurisdiction that derives its jurisdiction over the custody of children from statute, which means that its jurisdiction is not inherent and arises only in those situations outlined in the statute creating the juvenile courts. T.B. v. T.H., 30 So.3d 429, 431 (Ala.Civ.App.2009) (“Juvenile courts are purely creatures of statute and have extremely limited jurisdiction.”); see also Ex parte K.L.P., 868 So.2d 454, 456 (Ala.Civ.App.2003). Therefore, Evans does not preclude my conclusion that the juvenile court’s 2009 judgments were extinguished by the entry of the adoption judgment, which created in the maternal aunt and uncle and the child the new statuses of parents and child.
Allowing the juvenile court to entertain the maternal great-grandparents’ contempt claim and to potentially enforce the visitation rights awarded in the September 4, 2009, judgment would undermine the status of the maternal aunt and uncle as adoptive parents, who have, by statute, the rights of natural parents. Those rights include, in most circumstances, the right to refuse visitation with the child’s grandparents or other third parties. In an adoption by anyone other than a stepparent, the natural parents lose all parental rights to the adoptee. § 26-10A-29(b). Thus, all others who may claim a relationship or a right to the child by virtue of the natural parents’ relationship to the child also lose their relationships and rights to the child. Ex parte Bronstein, 434 So.2d at 782. As explained by the Bronstein court, “adoption, like birth creates legal relationships under which the adoptive parents gain certain rights which pre-empt any visitation rights by natural parents or grandparents.” Id. at 783.
I note that the maternal great-grandparents’ complaint, insofar as it sought additional visitation rights, could not be maintained in the juvenile court because the maternal great-grandparents lacked standing to institute an action seeking those rights. Although natural grandparents may be awarded postadoption visitation in certain relative adoptions, see Ala.Code 1975, § 26-10A-30, the maternal great-grandparents do not fall within the term “natural grandparents” contained in that statute; in addition, the juvenile court would have lacked jurisdiction to modify the adoption judgment to permit visitation under § 26-10A-30, because the probate court, which has exclusive jurisdiction over adoption proceedings, is the proper forum for such an action. Palmer v. Bolton, 574 So.2d 42 (Ala.Civ.App.1990), rev’d on other grounds, 574 So.2d 44 (Ala.1990). Thus, the maternal great-grandparents, in my opinion, lack standing to seek an award of grandparent visitation under the adoption code.[4]
Although the juvenile court may have had continuing jurisdiction over the September 4, 2009, judgment until the entry of the adoption judgment, I conclude that the juvenile court lacked jurisdiction to enforce or modify the visitation provisions of that judgment after the entry of the adoption judgment because of the maternal aunt and uncle’s changed status as adoptive parents, providing them a superior right to custody of the child, and because the maternal great-grandparents no longer *1188 have any basis upon which to predicate a right to seek visitation with the child in the juvenile court. To allow the juvenile court to retain jurisdiction to enforce or modify the provisions of the September 4, 2009, judgment would do violence to the spirit and letter of the adoption code and would infringe on the probate court’s exclusive jurisdiction to award grandparent visitation in the limited circumstances provided for in § 26-10A-30. Therefore, because this court may affirm the judgment of the juvenile court on any valid legal ground, I would affirm the judgment of the juvenile court dismissing the great-grandparents’ complaint for the foregoing reasons. See Byrom v. Byrom, 47 So.3d 783, 790 (Ala.Civ.App.2007) (“[A]n appellate court ‘may affirm a trial court’s judgment on “any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court.” ’ ”); see also Ferguson v. Baptist Health Sys., Inc., 910 So.2d 85, 96 (Ala.2005) (“While we affirm [the trial court’s] ruling on a ground different from the ground cited by the trial court, this Court, subject only to exceptions not applicable in this case, can affirm the judgment of the trial court if that judgment is supported by any valid legal ground.”).
BRYAN, J., concurs.

. As noted in the main opinion, in Ex parte E.R.G., 73 So.3d 634 (Ala.2011), our supreme court held Ala.Code 1975, § 30-3-4.1, the grandparent-visitation statute, unconstitutional. Therefore, I decline to address the maternal aunt and uncle’s argument that the maternal great-grandparents also lacked standing to pursue visitation under that statute.